**TEXAS POWER & LIGHT CO. v. BROWN-WOOD PUBLIC SERVICE CO. et al.**

**No. 8530.**

Court of Civil Appeals of Texas. Austin.

Nov. 10, 1937.

Rehearing Denied Jan. 5, 1938.

Worsham, Burford, Ryburn & Hincks, of Dallas, and McCartney, McCartney, & Johnson and Woodruff & Holloway, all of Brownwood, for appellant.

Callaway & Callaway, of Brownwood, and F. D. Wright, of Cisco, for appellees.

BAUGH, Justice.

This is the second appeal of this case. The first appeal, reported in Tex.Civ.App., 87 S.W.2d 557, was from an order refusing

a temporary injunction. This appeal is from a like refusal by the trial court after a hearing on the merits.

The city council of Brownwood, a home rule city of more than 10,000 inhabitants, granted to R. O. Matthews a proposed franchise to use and occupy the streets of that city for the operation of a light and power plant. This franchise was assigned by him to the Brownwood Public Service Company, a corporation. Within 20 days after the last publication, which was on June 10, 1935, of the ordinance granting such franchise, the appellant, a competing light and power company which had been operating in said city for a period of some 30 years, caused to be filed with the city council, as authorized by the city charter and by general law, article 1181, R.S. a referendum petition calling for an election to determine whether such proposed franchise should become effective. This petition contained the signatures of more than 500 persons, the body of which petition recited that they were qualified voters of the city of Brownwood. The city council, after an inquiry into the qualifications of such signers, and after eliminating the signatures of numerous persons, who thereafter and before June 30, 1935, had requested that their names be removed from such referendum petition, concluded that there remained on said petition the names of less than 500 bona fide qualified voters of said city, and refused to call such election. Whereupon this suit was filed, seeking to enjoin the holder of said franchise 'from proceeding under it on the ground that it was invalid, because of failure to refer it to popular vote.

Several propositions are presented on this appeal, most of which were determined by us upon the former appeal of this case and need not be reconsidered here. The controlling question here presented, as we view the record, is the sufficiency, vel non, of the referendum petition as of June 30, 1935. This depends upon the question of whether or not a resident of the city of Brownwood, who was more than 60 years of age on January 1, 1934, who had prior to June 30, 1935, neither paid a poll tax nor secured an exemption certificate, but was otherwise qualified, was a bona fide qualified voter of the city of Brownwood, under the provisions of the Constitution and general laws of the state of Texas.

The trial court found, which finding is not here questioned: "(e) That after deducting all removals the plaintiff's referendum petition as of June 30th, 1935, contained the names of only four hundred ninety-three (493) qualified voters who had paid poll taxes or had obtained exemption certificates, and that there were fifteen (15) other signers on plaintiff's referendum petition who were more than sixty years of age on January 1st, 1934, and who had the necessary residence requirements and entitled to exemption certificates, but had not obtained same, and were qualified voters unless their failure to secure exemption certificates disqualified them under articles 2960 and 3004, Revised Civil Statutes."

It is now settled law that the language of the Constitution determines the qualifications of the electorate. Neither the statutes nor the provisions of a city charter, which in home rule cities must conform with the Constitution and the general laws of the state, can impose additional qualifications as a prerequisite to the right of its citizens to vote, which are not authorized by the Constitution. McCutcheon v. Wozencraft, 116 Tex. 440, 294 S.W. 1105; Wendover v. Tobin, Tex.Civ.App., 261 S.W. 434; Cameron v. Connally, 117 Tex. 159, 299 S. W. 221; Stahl v. Miller, Tex.Civ.App., 63 S.W.2d 578. The Constitution itself nowhere requires either the payment of a poll tax or the procurement of an exemption certificate by those exempted from the payment of a poll tax. Section 2 of article 6 of the Constitution, however, which prescribes the qualifications for voting, contains the following proviso: "And provided further, that any voter who is subject to pay a poll tax under the laws of the State of Texas shall have paid said tax before offering to vote at any election in this State and hold a receipt showing that said poll tax was paid before the first day of February next preceding such election." This provision necessarily implies that the Legislature has the power to levy such a poll tax, and, if it does so, requires that such tax be paid before February 1st, and a receipt obtained, as essential to the right of the citizen to vote. Section 3 of said article 6 further recognizes the right of the Legislature to make such requirement by providing that no such poll tax shall be levied upon those who pay no property tax for the purpose of paying municipal debts created or assumed by the vote of those who do pay property taxes. And section 4 of said article of the Constitution expressly authorizes the Legislature, in cities having a population of 10,000 or more, to provide for registration of voters,

and to enact such other legislation as may be necessary to detect and punish fraud and preserve the purity of the ballot box.

Pursuant to these provisions of the Constitution, the Legislature has enacted numerous laws designed to prescribe voting qualifications, the manner and method of conducting elections, and the requirements that must be met in order to preserve the purity of the ballot box and to prevent fraud in elections. One of these, article 2959, R.S., requires the payment of a poll tax of those between 21 and 60 years of age, as a necessary qualification for voting. Article 2960, R.S., exempts from such payment, amongst others, every person who is more than 60 years old, and provides that he may vote without such payment, "if he has obtained his certificate of exemption from the county tax collector when the same is required by the provisions of this title." Article 2968, R.S., as amended by Acts 1930, 5th Called Sess., c. 26, § 1, Vernon's Ann.Civ.St. art. 2968, expressly requires, in cities of more than 10,000 inhabitants, those who are exempted from payment of a poll tax, to procure an exemption certificate before February 1st of the year in which they offer to vote. This statute prescribes these requirements with the same particularity and exactness as do the statutes relating to payment of poll taxes. And article 3004, R.S., relating to voting, makes the same requirements with reference to exemption certificates, as essential to the right to vote, as it does with reference to poll tax receipts.

■ Since the matter of requiring payment of a poll tax as a prerequisite to the right to vote is one determinable in the wisdom of the Legislature, manifestly it could make such regulations with regard thereto as it saw fit, so long as same do not contravene the Constitution. It undoubtedly could have required payment of a poll tax of all electors, as a condition precedent to their right to vote. But because of misfortune, age, injury, or other reasons satisfactory to it, the Legislature has seen fit to exempt certain classes from payment of a poll tax upon which it undoubtedly had the power, had it seen fit, to levy such tax. Such exemption is not predicated upon ability to pay, but the age of 60 years is arbitrarily fixed. And the Constitution, in section 4 of article 6, recognizes that in order to preserve the purity of elections, safeguards may be required in cities of more than 10,000 inhabitants, which are not authorized in cities of lesser population. It is clear, we think, that if the Legislature has the power to require a poll tax receipt of all the citizens of the state as a qualification for voting, and for reasons sufficient to itself, sees fit to exempt certain classes from the payment of such tax, it has equal power to prescribe, as a qualification for voting, equal or similar requirements for those gratuitously exempted from poll tax payments, as it does for those who are required to pay the tax. We think the necessary implication of article 2960, R.S., is that a citizen over 60 years of age, by seasonably paying a poll tax, be entitled to vote in any event. But if he desires to take advantage of the exemption afforded him by law, and not pay a poll tax, then he must, as a qualification for suffrage in cities of more than 10,000 inhabitants, seasonably obtain exemption certificate as a necessary qualification for voting.

■ Consequently, the city council of the city of Brownwood properly excluded, in testing the sufficiency of the referendum petition presented to them, the names of those more than 60 years of age who had not secured exemption certificates as not being qualified voters within the provisions of article 1181, R.S.1925. And when so excluded the petition did not contain the signatures of 500 bona fide qualified voters therein prescribed as necessary to require the submission of such franchise to a vote of the people.

■ The remaining question raised by appellant relates to the sufficiency of the publication of the ordinance granting the franchise attacked. Appellant contends that, because said ordinance carried a penalty, publication thereof was necessary to its validity, and that the publication made did not comply with the provisions of the city charter. The charter provided that: "All ordinances carrying a penalty, shall be published once a week for two consecutive weeks in some newspaper published in the City of Brownwood and shall become effective on the day following the date of the second aforesaid weekly publication." The publication as made in the instant case was on Saturday, June 8, 1935, and on Monday, June 10, 1935. The provision for two weekly publications would reasonably imply, we think, publications with a week intervening between same. The penal provision of the ordinance granting the franchise in the instant case was one defining as a misde-

meanor and prescribing a fine not to exceed $50 against any person who should obstruct, injure, or damage any machinery, wires, fixtures, appliances, etc., erected or used by the appellee under such franchise in supplying electricity thereunder. Manifestly, the purpose of this provision was to protect the property of the grantee in the enjoyment of its grant against injury by malefactors; and is not essential to the validity of the grant otherwise to use the streets of the city in the operation of its light plant. Appellees' franchise for this purpose would have been equally valid, had this penal provision been omitted entirely. And if it be conceded, as appellee in effect does concede, that as to the penal provision of said ordinance the publication was insufficient to meet the requirements of the city charter; the provision attacked is clearly severable from the remainder of the ordinance and could be stricken down without invalidating the ordinance as a whole. It has been repeatedly held that such rule should apply where valid and invalid provisions are severable. 30 Tex.Jur., § 169, p. 306, and numerous cases there cited.

Finding no error, the judgment of the trial court is affirmed.

Affirmed.

### On Motion for Rehearing.

Appellant again urgently contends that the only limitation under section 2 of article 6 of the Constitution that could be placed upon those possessing the qualifications for voting therein prescribed, must be confined to those who are by law required to pay a poll tax; and that since those more than 60 years of age are not required by law to pay a poll tax, then, if they meet the other requirement of the Constitution, they are qualified voters whether they ever secure an exemption certificate or not. That is, that since section 2 of article 6 of the Constitution makes no mention of exemption certificates as a prerequisite to a right to vote, the Legislature is without power to impose such a requirement.

Whether authorized under section 2 of article 6 to require a citizen to procure an exemption certificate as a qualification for voting or not, section 4 of article 6 of the Constitution does authorize the Legislature to enact such laws as it deems necessary to preserve the purity of the ballot box; and to require registration of voters in cities of 10,000 inhabitants or more. In this connection appellant further contends that if the requirement that exemption certificates be first obtained be treated as a registration statute, it cannot disqualify one otherwise entitled to vote who fails to comply with it. That is, that registration is but a method of furnishing to the election judges evidence of the right to vote, and not a limitation upon the citizens' right to vote prescribed in section 2 of article 6. With this contention we cannot agree. If it were sustained, section 4 of article 6 of the Constitution relating to cities of 10,000 or more inhabitants would be meaningless. If registration of voters may be required, but failure to register be no disqualification, the efficacy of registration to preserve the purity of the ballot box would be destroyed and the constitutional provision authorizing it would mean nothing. We see no valid reason to disqualify one otherwise authorized under the Constitution to vote, because he has not obtained a poll tax receipt, yet to hold that one in a city of 10,000 inhabitants or more, who is required by law under section 4 of article 6 of the Constitution to register before he can vote, becomes a qualified voter whether he registers (obtains an exemption certificate) or not. The steps required by law for one who possesses the other attributes of suffrage prescribed by the Constitution are as essential, it seems to us, to qualify him as a voter in the one case as in the other.

Appellant also insists that section 18 of article II of the charter of the city of Brownwood requires that a proposed ordinance granting a franchise of the character here involved be published in a newspaper two days prior to its final passage; that the one here involved was not published until after its final passage, and is therefore void and no franchise ever became effective.

This section of the city charter provides that no such utility shall be granted a right to use the streets of the city without the consent of the governing body of the city expressed by ordinance; "and before such ordinance proposing to make any grant or franchise or privilege to any applicant to use or occupy any street, avenue, alley or any other public ground belonging to or under control of the city, shall become effective, publication of said ordinance, as finally proposed to be passed, shall be made in a newspaper published in the City of Brownwood for two days, or once if in a weekly paper; which publication shall be made at the expense of the applicant desiring said

grant, and said proposed ordinance shall not be changed unless republished as in the first instance, nor shall any such ordinance take effect or become a law or contract or vest any rights in the applicant therefor, until after the expiration of twenty days from the last publication of said ordinance, as aforesaid. Pending the time such ordinance may become effective, it is hereby made the duty of the governing authority of the City to order an election, if requested so to do, by written petition, signed by at least twenty per cent. of the legally qualified voters, as shown by the tax rolls for the preceding year, at which election the qualified voters of said City shall vote for or against the proposed grant, as set forth in detail by the ordinance conferring the right and privileges upon the applicant therefor. Such election shall be ordered not less than ten days nor more than thirty days from the date of filing of said petition, and if, at said election, the majority of the votes cast shall be for the granting of such franchise or privilege, said ordinance and the making of said proposed grant shall thereupon become effective; but if the majority of the votes cast at said election shall be against the granting of such franchise or privilege, such ordinance shall be ineffective and the making of such proposed grant be null and void."

In the instant case the ordinance embodying the proposed franchise was presented to a regular meeting of the city council on November 27, 1934, and on motion unanimously adopted by the council passed first reading. At a called meeting of the council on December 4, 1934, it unanimously passed second reading. On January 22, 1935, at a regular meeting of the city council the ordinance, as amended (in what particular it was amended is not shown), passed third reading and final passage by unanimous vote of the council, and was on that date approved by the mayor. Publication of the ordinance was made on June 8 and 10, 1935.

On the one hand, as urged by appellant, a reasonable construction of the charter provision above quoted is that it contemplated the publication of the proposed franchise ordinance before it was finally passed. Such publication would, while the matter was still pending before the city council and before final action be taken thereon,

fully apprize the public of its contents and so give them opportunity to appear before the council in favor of or against such grant by the governing body of the city.

On the other hand, if publication of such proposed ordinance had been made in the instant case for two days prior to November 27th, when it passed first reading before the council, or prior to December 4th, when it passed second reading, the 20-day period following such last publication would have expired prior to January 22, 1935, when the ordinance was finally passed, and it could have then become effective immediately. If it had, under such circumstances, become effective immediately upon approval by the mayor (and it could not have been a valid grant until then), then no time would then have intervened in which a referendum could have been asked for by petition as provided for in the charter. And the language of the latter portion of section 18 above quoted, viz., "Pending the time such ordinance may become effective," etc., such referendum petition may be filed, manifestly contemplates that such ordinance has been finally passed by the council, but that something still remains to make it become effective. Under this part of the charter provision, therefore, it may with equal reason be urged that publication of the ordinance as finally acted upon by the council was meant, and the 20 days intervening after publication thereof before it should become effective, was to afford the voters by petition an opportunity to refer the matter to popular vote.

In no event would the ordinance become effective until the expiration of 20 days after the last publication thereof. Without a referendum thereon it would, if otherwise regular, become a binding grant after such 20 days. We are of the opinion, therefore, that a publication, after final action of the council upon the proposed franchise, meets the requirements of the city charter, and so affords, as this case clearly demonstrates, an opportunity, after the city council has acted in the premises, for interested qualified voters to refer the grant or refusal of the franchise to the people, rather than abide the decision of the city council in the matter.

Appellant's motion for rehearing is therefore overruled.

Overruled.