GEORGE T. THOMAS ET AL V. TED GROEBL ET AL.

No. A-1669. Decided June 23, 1948.
Rehearing overruled June 30, 1948.
(212 S. W., 2d Series, 625.)

71

*George T. Thomas,* County Attorney of Howard County, of Big Spring, for petitioner.

A caption of a bill which is broader than the bill itself renders the act unconstitutional. National Biscuit Co. v. State, 129

S. W. (2d) 494; Raymond v. Kibbe, 95 S. W. 727; Ward Cattle & Pasture Co. v. Carpenter, 109 Texas 103, 200 S. W. 251.

An act of Legislature, regarding poll tax exemption certificates, does not make illegal the vote of a person holding a permanent exemption certificate and otherwise qualified, but who has not obtained a certificate of exemption for the current year and the Court of Civil Appeals erred in holding such votes illegal. Texas Power & Light Co. v. Brownwood Public Service Co., 111 S. W. (2d) 1225; Moore v. Plott, 206 S. W. 958.

*J. L. Sullivan, Coffee & Coffee* and *Thos. J. Coffee,* all of Big Spring, for respondent.

MR. JUSTICE SMEDLEY delivered the opinion of the Court.

In an election held September 9, 1947, in the Big Spring Independent School District, Howard County, for the levy of a maintenance tax and for the issuance of bonds, forty-five persons over the age of sixty, who resided in Big Spring, a city of more than ten thousand inhabitants, and who held permanent certificates of exemption issued during prior years but did not hold renewed or reissued certificates for the current year, were permitted to vote. The district court in this suit, filed by respondents as an election contest, concluded that those forty-five votes were illegal, and on that conclusion rendered judgment that "the local maintenance tax duly and legally carried" and that "the bond issue failed to carry." If those forty-five votes had been held to be legal, the tax increase would have failed to carry. The judgment of the trial court was affirmed by the Court of Civil Appeals, which held that, by reason of the provisions of Chapter 333, Acts of the Regular Session of the 49th Legislature amending Article 2968 of the Revised Statutes, the trial court was correct in holding that the forty-five voters who had not obtained certificates of exemption for the current year were not qualified voters. 208 S. W. (2d) 412.

■ This Court has jurisdiction of this case, although it is an election contest, because "the validity of a statute (Chap. 333, Acts Regular Session of the 49th Legislature) is questioned by the decision" of the Court of Civil Appeals. See Article 1821, Revised Civil Statutes, as amended by Chapter 33, Acts Regular Session 41st Legislature, and Article 1728, as amended by Chapter 144, Acts Regular Session 40th Legislature. While that court sustained the Act as valid, its constitutionality was attacked by three points of error in the appellants' brief and that

court in its opinion gave serious consideration to them. The decision of the Court of Civil Appeals, therefore, questioned the validity of the statute, as it "raised a question about," "called in question," its validity and subjected the question to judicial examination. See Webster's New International Dictionary. Having jurisdiction of the case, this Court may also review and pass upon the question as to the correct construction of the Act, even though we may hold that the Act is valid.

■ The principal attack made by petitioners upon the Act is that the caption is defective in that it is so much broader than the body of the Act as to be misleading. The caption is:

"An Act to amend Article 2968 of the Revised Civil Statutes of the State of Texas, requiring those persons entitled to poll tax exemption to secure a new certificate annually; and declaring an emergency."

It is argued that this caption would inform interested persons that it is proposed by the amendment to require all persons entitled to exemptions to secure new certificates annually, whereas the body of the Act provides that only those persons who reside in cities of ten thousand inhabitans or more shall procure new certificates annually. It may be conceded that the caption is somewhat broader than the enactment, but this does not necessarily render the Act invalid. All doubts should be resolved in favor of the constitutionality of the Act, and this defect in the caption will not render it invalid unless it clearly appear that the caption is misleading as to the contents of the Act. In our opinion, the reference in the caption to the article of the statutes to be amended saves the caption from being fatally defective. That reference directs attention to all of the provisions in the article to be amended and they relate to the procuring of certificates only by persons residing in cities of ten thousand inhabitants or more. When the caption is thus read in connection with the provisions of the article to be amended, it is consistent with the body of the enactment and is not misleading. English & Scottish-American Mortgage etc., Co. v. Hardy, 93 Texas 289, 298, 55 S. W. 169; Tarrant County Water etc. District v. Fowler, 142 Texas 375, 378, 179 S. W. (2d) 250; Lowery v. Red Cab Co., 262 S. W. 147, application for writ of error refused.

Petitioners attack the 1945 amendment (Chap. 333) as unconstitutional "because of being in excess of the power of the Legislature to limit suffrage," but the amendment, construed as in our opinion it should be construed, clearly is not open to that

attack. We need not discuss, and we express no opinion as to, the further contention that Article 2968, before the amendment 1945, was unconstitutional, because the rights of the forty-five electors to vote have not been questioned for failure to comply with the provisions of that article. They complied with them.

The important question in the case is: Did the Legislature, in rewriting Article 2968 by Chapter 333, Acts of the Regular Session of the 49th Legislature (1945), intend that qualified voters exempted by law from the payment of a poll tax, who reside in a city of ten thousand inhabitants or more and who have procured exemption certificates, as required by the first paragraph of Article 2968 both before and after this amendment, shall forfeit or lose their rights to vote for failure to procure, before the first day of February next preceding the election in which they offer to vote, renewed or reissued certificates of exemption. The intention of the Legislature is to be found in the terms of the amendment, Chapter 333, itself, read in the light of the applicable provisions of the Constitution and in the light of Article 2968 as it existed at the time of the amendment.

Section 1 of Article VI of the Constitution, which article is entitled Suffrage, sets out the classes of persons who shall not be allowed to vote, and section 2 provides that *every person* subject to none of those disqualifications, who shall have attained the age of twenty-one years, who shall be a citizen of the United States and who shall have resided in the State one year and within the district or county six months "shall be deemed a qualified elector." The only limitation or qualification of the right to vote thus given and assured is that any voter who is subject to pay a poll tax under the laws of the State shall have paid the tax before offering to vote and shall hold a receipt showing that the poll tax was paid before the first day of February next preceding the election. In further assurance of the right of suffrage Section 2 of Article XVI of the Constitution declares that the privilege of free suffrage shall be protected by laws regulating elections. The Constitution says nothing with reference to exemptions of payment of the poll tax and nothing with reference to certificates of exemption. Section 4 of Article VI states that the Legislature may provide by law for the registration of all voters in all cities containing a population of ten thousand inhabitants or more.

Article 2955 of the Revised Statutes defines the qualifications of voters in the same language as that used in Section 2 of Article VI of the Constitution, followed by the same proviso that any person subject to pay a poll tax under the law shall

have paid the tax before he offers to vote and shall hold a receipt showing that the tax was paid before the first day of February next preceding the election. This proviso is followed in the statute by these words: "and if said voter is exempt from paying a poll tax and resides in a city of ten thousand inhabitants or more, he or she must procure a certificate showing his or her exemptions, as required by this title." It is significant that this article which prescribes the qualifications of voters makes, as does the Constitution, the holding of a poll tax receipt (when the voter is subject to pay the tax) showing that the tax was paid before February 1 next preceding the election, a qualification for voting, and that the article does not require that one exempt from that tax must hold an exemption certificate issued before February 1 next preceding the election or at any other specified time in order to be a qualified voter. The provision is merely that the exempt voter must procure a certificate showing his exemption as required by this title.

Article 2960 exempts from the payment of poll tax every person who is more than sixty years old, or who is blind or deaf or dumb, or is permanently disabled, or has lost a hand or a foot, or is a disabled veteran of a foreign war. It is Article 2968 that requires persons exempted from the payment of the poll tax, who resides in cities of ten thousand inhabitants or more, to obtain from the tax collector certificates showing their exemption. The substance of that article, several times rewritten after its enactment as a part of the 1905 election law, was, at the time of the enactment of Chapter 333 of the Acts of the Regular Session of the 49th Legislature, (1945) as follows: The first paragraph provided that the exempted person residing in a city of ten thousand or more inhabitants should "before the first day of February of the year when such voter shall have become entitled to such exemption" obtain from the tax collector a certificate showing his exemption. This was followed by regulations as to the issuance of the certificate, including the oath to be taken by the exempted voter, the issuance of the certificate from a well bound book, with duplicate copy retained by the collector, and the form of the certificate. In the form was incorporated the statement that the certificate is permanent and need not be renewed or reissued yearly except in the event of removal from the voting precinct; and the article further expressly provided that the certificate should be marked permanent and that thereafter it should not be required of the voter, while residing in the county and precinct where the certificate was issued, to obtain a yearly certificate of exemption. Thus the intention and meaning of the statute was, up to the time of the

enactment of the 1945 amendment, that the first certificate or the certificate originally issued to the exempted voter under the first paragraph of the article should serve as the evidence of his exemption whenever he offered to vote in any year after its issuance, and that it need not be renewed except in the event of change of residence to another voting precinct. This had been the law for fifteen years, as the Act of 1930 amending Article 2968, although fixing a different period within which the original certificate could be procured, also provided that the certificate once issued was permanent and need not be reissued or renewed. Chapter 26, Acts Fifth Called Session 41st Legislature, pp. 157-159.

We look then to the 1945 Act to determine whether the legislature clearly intended by its enactment so to change the existing law as to make a new certificate or a reissued or renewed certificate, issued before February 1 next preceding the time when the elector offered to vote, the only evidence of his exemption and to deprive him of the right to vote if, although holding an original certificate, he had failed to procure such new, reissued or renewed certificate.

■ That amendment (Chapter 333, Acts Regular Session, 49th Legislature) rewrites Article 2968, making but few .changes in it. Its first paragraph, in the exact language of the same paragraph before amendment, provides that every exempt person residing in a city of ten thousand inhabitants or more "shall, before the first .day of February of the year when such voter shall have become entitled to such exemption" obtain from the tax collector a certificate showing his exemption. The amended article continues to provide in the same language as before for the making of oath, the issuance of the certificate from a well bound book containing original and duplicate, and for the form of the certificate. The first change made is to omit from the form the statement that the certificate is permanent and need not be renewed or reissued. Then the provisions of the article before its amendment that the certificate shall be marked permanent and that it shall not be necessary for the voter while residing in the same voting precinct to obtain yearly a certificate of exemption, and that if the voter does remove to another precinct he shall present his certificate to the collector for endorsement,— all are omitted and there is substituted for them the following sentence: "All certificates of exemption shall be renewed or reissued annually." The caption of the amended Act, which has been quoted above, merely states that it is an Act to amend Article 2968, requiring persons entitled to poll tax exemptions

to secure a new certificate annually, and the emergency clause recites as the emergency the fact that there are on the poll tax exemption lists the names of many people who are deceased or who have removed from the state and that this places a heavy burden upon the assessors and collectors.

Thus the substance of the Act is that it requires, as it did before, that the exempted person procure his certificate of exemption before the first day of February of the year when he shall have become entitled to the exemption, and, by way of change, that all certificates of exemption shall be renewed or reissued annually. The Act provides no penalty for failure to procure a new certificate every year, and certainly it does not, by express language nor by any reasonable implication nor even by the slightest intimation, evidence an intention on the part of the legislature that a qualified voter who has duly procured his first certificate shall be deprived of his right to vote, or that he shall not vote, if he has failed to procure a renewal or reissuance of the certificate.

If that had been the intention of the legislature in rewriting Article 2968, it could very easily have been expressed, as was clearly expressed in Section 2 of Article VI of the Constitution, the intention to make the payment of the poll tax before February 1 each year and the procuring of a receipt showing such payment a qualification for voting. That intention, had it existed, could have been expressed in the amendment of Article 2968 as clearly as it was expressed in Article 2968a (Vernon's Annotated Civil Statutes) where the legislature, in requiring certificates of exemption to be procured by persons exempt from the poll tax on account of becoming of age or becoming residents of the state after the first day of January preceding its levy, provided that they should obtain the certificates "on or before the thirty-first day of January of the year in which he or she offers to vote," and that "no such person who has failed or refused to obtain such certificate of exemption from the payment of poll tax shall be allowed to vote." Not only does the amended article fail, by the use of plain terms which easily could have been employed to make the procuring of a renewed or reissued certificate a condition to the exercising of the right to vote; it does not even use in connection with the provision as to annual renewal or reissuance of the certificate, or elswhere, such words as "of the year in which he offers to vote," which are used in Article 2968a, or such words as "before he offers to vote," which were used in Article 2968 before its amendment in 1930. The

amendment of 1945 contains merely the statement: "All certificates of exemption shall be renewed or reissued annually."

It is true that a construction of amended Article 2968 which permits electors to vote without having procured annually a renewed or reissued certificate gives the article a liberal construction in favor of the voter and that it treats as directory what appears by reason of the use of the word "shall" to be mandatory. That construction is justified by sound authority. The right to vote is so fundamental in our form of government that it should be as zealously safeguarded as are our natural rights. It has been said that "laws abridging the natural right of the citizen should be restrained by rigorous constructions within their narrowest limits." It is sufficient, however, that we apply here the less extreme and well established rule of construction that statutes regulating the right to vote should be given a liberal interpretation in favor of that right. Ramsey v. Wilhelm, 52 S. W. (2d) 757, application for writ of error refused; Moore v. Plott, 206 S. W. 958; Turner v. Teller, 275 S. W. 115; State ex rel Paggi v. Fletcher, 50 S. W. (2d) 450; Neil v. Pile, 75 S. W. (2d) 899; Stratton v. Hall, 90 S. W. (2d) 865; Lee v. Whitehead, 182 S. W. (2d) 744; State ex rel Sharp v. Martin, 186 S. W. (2d) 111; Huff v. Duffield, 251 S. W. 298, 29 C. J. S. p. 27, sec. 7; Sutherland's Statutory Construction (3rd Ed.), Vol. 3, p. 445, Sec. 7215. This rule of construction, to avoid depriving individuals of their franchises, applies as well to registration laws as to other laws regulating voting. Sutherland's Statutory Construction (3rd Ed.), Vol. 3, p. 115, Sec. 5820. The amended article therefore should be construed as not intending to deprive the elector of his right to vote for failure to procure the renewed or reissued certificate, especially when nowhere in the amendment is it said that such failure shall incur as a penalty the loss of the right to vote. Funkhouser v. Landfried, 124 W. Va. 654, 22 S. W. (2d) 353.

The language of the amendment, because of the use of the word "shall" is mandatory in form, but the provision may be treated as directory. The word "shall" in a statute may be and often is "held as merely directory and as having been used in the sense of 'may'." Hess & Skinner Engineering Co. v. Turner, 109 Texas 208, 210, 203 S. W. 593; Schlemmen v. Board of Trustees, 59 S. W. (2d) 264, application for writ of error refused; Norman v. Thompson, 72 S. W. 62, 64, 66; Words and Phrases, Vol. 39, pp. 91-120. Two recent decisions of this Court in election cases further support the conclusion that notwithstanding the use of the word "shall" the amendment of Article

2968 should be regarded as directory rather than mandatory. In Markowsky v. Newman, 134 Texas 440, 136 S. W. (2d) 808, despite the provision of Section 3a of Article VI of the Constitution (adopted November 8, 1932) defining as qualified voters in an election for the issuance of bonds only those owning taxable property "who have duly rendered the same for taxation," and the provision of Article 1043 of the statutes, as amended in 1934, that the property owner "shall between January first and April first of each year" render his property for taxation, the court held Article 1043 to be directory and not mandatory, and that property owners otherwise qualified were entitled to vote even though they had not rendered their property until after April first. In Kilday v. Germany, 139 Texas 380, 163 S. W. (2d) 184, the Court, in view of the peculiar facts, treated as directory that part of Article 3111 of the Revised Civil Statutes of 1925 which provides that the request to have one's name placed on the official ballot for a general primary as a candidate for the nomination for a state office "shall" be filed not later than the first Monday in June.

In Markowsky v. Newman, supra, the court quoted with approval from Sutherland's Statutory Construction as follows:

"Those directions which are not of the essence of the thing to be done, but which are given with a view merely to the proper, orderely and prompt conduct of the business, and by the failure to obey the rights of those interested will ont be prejudiced, are not commonly to be regarded as mandatory; and if the act is performed, but not in the time or in the precise mode indicated, it will be sufficient, if that which is done accomplishes the substantial purpose of the statute."

The true or substantial purpose of Article 2968, as amended in 1945, is to require persons exempted from the payment of the poll tax to make a record of the fact that they are exempted and to procure a certificate as evidence thereof. That is the essence of the thing to be done. The direction to procure annually a renewal of the certificate is added, as indicated by the emergency clause, with a view merely to make more orderly the records of the tax assessors and collectors and to relieve those officers of the burden of records containing names of deceased persons or of persons who have removed from the state. The true or substantial purpose of the article, as above stated, has been accomplished when the qualified voter, exempt in fact from the poll tax, appears before the election officer with his original certificate of exemption, even though the records of the assessors'

and collectors' offices would have been more orderly and less burdensome to those officers had the voter and those similarly situated complied with the direction as to renewal.

Article 3004 has been cited to support the construction given the Act by the Court of Civil Appeals. That article provides that no citizen shall be permitted to vote unless he first presents to the judge of election his poll tax receipt or certificate of exemption issued to him before the first day of February of the year in which he offers to vote. It was Section 66 of the election law of 1905 and was copied with no changes in the 1911 and 1925 revisions of the statute. It was held in Ramsey v. Wilhelm, 52 S. W. (2d) 757, 760, in which writ of error was refused, that the provisions of Article 3004, being a part of Chapter 8 of Title 50, which relates to the manner and form of holding elections, are for the guidance of election judges in testing qualifications of a voter and do not purport to define qualifications of voters. Thus construed, and because the statute contains no provision that ballots cast without compliance with it shall not be counted, the article is directory and not mandatory.

Article 3004, for another reason, does not support the construction given the Act by the Court of Civil Appeals. When enacted it was consistent with Section 19 of the election law of 1905, which became Article 2968, for that section directed that the exempted voter residing in a city of ten thousand inhabitants, or more, should "after the first day of October and before the first day of February following before he offers to vote" obtain an exemption certificate. The part of Article 3004 directing that one offering to vote present a certificate of exemption issued before the first day of February of the year in which he offered to vote was repealed by clear implication by the amendment of Article 2968 in 1930, being in irreconcilable conflict with that part of the amendment which permitted the voter to obtain his certificate at any time after the first day of January after the year when he should have become entitled to the exemption and before he offered to vote, and which provided that the certificate need not be revived or reissued annually. Chapter 26, Acts 5th Called Session 41st Legislature. The 1945 amendment did not have the effect of re-enacting or reviving the part of Article 3004 that was repealed by the 1930 amendment. Section 36 of Article III of the Constitution of Texas Article 10, Subdivision 7, Revised Civil Statutes of 1925; Stirman v. State, 21 Texas 734; State Bank of Barksdale v. Cloudt, 258 S. W. 248; Sutherland's Statutory Construction (3rd Ed.), Vol. 1, page 520, Sec. 2440.

The 1945 amendment certainly does not so clearly express an intention on the part of the legislature to deprive those who fail to procure annually a renewal of their original certificates of their right to vote that no weight whatever should be given to the Attorney General's opinion holding to the contrary. At least the amendment is in this respect fairly open to construction. On July 16, 1946, in a carefully reasoned opinion written by Assistants Wm. J. Fanning and Judge Ocie Speer, the Attorney General, construing the Act of 1945, held that the legislature in its enactment did not impose upon electors either expressly or by implication, the severe penalty of disfranchisement for failure to procure annual renewal exemption certificates and that holders of original or permanent certificates, who have failed to renew their certificates, can nevertheless vote. That opinion also held the Act unconstitutional because of defective caption. The opinion was given wide publicity and it was reaffirmed on September 11, 1946, in another opinion of the Attorney General, in which it was suggested that the legislature would soon be in session and would have an opportunity to clarify the law. The 50th Legislature, which convened January 14, 1947, made no change in that statute. It is no doubt true that many exempted electors and at least some of the tax collectors, relying upon the Attorney General's opinion, have failed to procure or to issue renewed certificates of exemption. Under these circumstances great weight should be given to the Attorney General's opinion. See Buchanan v. Girvin, 142 Texas 134, 176 S. W. (2d) 729; Isbell v. Gulf Union Oil Co., 147 Texas 6, 209 S. W. (2d) 762.

We hold, for the following reasons, that the legislature in enacting Chapter 333, the 1945 amendment of Article 2968, did not intend that voters exempted from the payment of the poll tax, who have procured certificates of exemption as required by the first paragraph of the amended article, shall lose their rights to vote for failure to procure renewed or reissued certificates for the current year. First, the amended article contains no expression of that intention which readily could have been expressed had the intention existed. Second, the amended article should be given a liberal construction in favor of the fundamental right to vote, and that right should not be taken away by resort to implication. Third, the provision for procuring annual certificates should be construed as directory rather than mandatory for the foregoing reasons and for the further reason that the true or substantial purpose of the amended article is accomplished when the voter obtains the first or original certificate of exemption required by the first paragraph of the article. Fourth, this construction is supported by the Attorney

General's opinion and reliance upon it by voters and officials and the failure of the legislature to clarify or change the statute.

We agree also with the ruling in the Attorney General's opinion that the annual renewal certificate may be obtained at any time before the holder offers to vote. The 1945 amendment provides merely that the exemption certificate shall be renewed or reissued annually. It is not said that it must be procured before February 1. The word "annually" means yearly once a year and does not signify what time in a year. Rolerson v. Standard Life Insurance Co., 244 S. W. 845; McMaster v. New York Life Ins. Co. (8th Cir.), 99 Fed. 856, 869.

The judgments of the district court and the Court of Civil Appeals are reversed and judgment is here rendered declaring and adjudging that a majority of the qualified electors who voted in the election described in the pleadings voted against the local maintenance tax and against the bond issue submitted in the election, and that both of said issues failed to carry.

Since an emergency exists on account of the yearly date of the primary election, only five days, instead of the fifteen days given by the rules, will be allowed for the filing of motion for rehearing herein.

Opinion delivered June 23, 1948.

Rehearing overruled June 30, 1948.

Justice Simpson, dissenting.

With all deference to the majority view, I must dissent. I am firmly convinced that the district court and the Court of Civil Appeals decided this case right and their judgments ought to be affirmed.

The case turns upon what effect shall be given to the 1945 amendment to Article 2968, R. S. Deleting parts extraneous to the problems under study, the amendment reads:

"Article 2968. EXEMPTION CERTIFICATES IN CITIES. Every person who is exempted by law from the payment of a poll tax, and who is in other respects a qualified voter, who resides in a city of ten thousand (10,000) inhabitants or more, shall, before the first day of February of the year when such voter shall have become entitled to such exemption, obtain from the Tax Collec-

tor of the county of his or her residence, a certificate showing his or her exemption from the payment of a poll tax.

"Such exempt person shall on oath state his name, age, race, county of residence, occupation, the length of time he has resided in said county, and the length of time in the city, and the number of the ward or voting precinct in which he resides, and shall also state his street address by name and number, if numbered, and the grounds upon which he claims exemption from the payment of a poll tax.

"A certificate of exemption from the payment of poll tax shall be issued from a well-bound book, containing therein original and duplicate, and upon issue the certificate issued to the exempt voter shall be detached from said book, leaving therein a duplicate carbon or other copy thereof, which shall contain the same description and the original certificate bearing its proper number shall be delivered to the citizen in person to identify him in voting. Certificates of exemption for each precinct shall be numbered consecutively, beginning at Number One. * * *

"All certificates of exemption shall be renewed or reissued annually."

The Constitution authorizes the legislature to enact laws requiring the registration of voters in cities of more than 10,000 inhabitants. This authority is given in connection with the mandate found in the same section of the Constitution, that the legislature shall "preserve the purity of the ballot box." Texas Const., Art. VI, sec. 4. The Terrell Election Law of 1905 required the registration of voters in cities of over 10,000 inhabitants (Art. 2953, R. S. 1911, carried forward unchanged as Art. 2968, R. S. 1925). Although this original provision has been amended five times since the 1925 codification, the registration requirement has never been repealed. The absolute necessity that a person exempt from the payment of the poll tax in cities of over 10,000 inhabitants seasonably obtain a certificate of exemption before he can vote has been unequivocally upheld and ought not to be considered an open question. Texas Power & Light Co. v. Brownwood Public Serevice Co. (Tex. Civ. App.) 111 S. W. (2d) 1225, error refused, is direct authority for this statement. I submit that the majority opinion overrules this case on the points under consideration.

The historical background of this legislation must be reviewed in order to appraise it accurately. From 1905 to 1930,

it was provided that a voter exempt from the payment of poll tax should "after the first day of October and before the first day of February following, before he offers to vote, obtain from the tax collector of the county of his residence a certificate showing his exemption from the payment of a poll tax." Art. 2953, R. S. 1911; Art. 2968, R. S. 1925. This was taken to mean that the exemptions should be obtained annually. But in 1930 the Forty-first Legislature made sweeping changes in the measure. It provided, first, that a voter exempt from poll tax payment under Article 2960, R. S., might obtain his exemption certificate at any time after the 1st day of January after the year when such voter shall have become entitled to such exemption, and before he offers to vote." And, second, it provided that so long as the voter continued to reside in the county and precinct where the certificate was originally issued, he did not have to get it renewed annually. Acts 1930, 5th C. S., ch. 26.

The 1930 amendment apparently was working out badly. People entitled to them could get exemption certificates the very day before an election and their names would of course not appear on any poll list in the hands of the election judges. So the Forty-fourth Legislature in 1935 (Acts 1935, 2nd C. S., ch. 448) changed the 1930 act to require the voter to get his certificate "before the 1st day of February of the year when such voter shall have become entitled" to exemption from paying a poll tax. But the 1935 law left the 1930 provision for permanent certificates unchanged.

Now, in 1945 the Forty-ninth Legislature enacted the amendment which has in part been quoted and which is Article 2968 as it reads in the statutes today. Acts 1945, ch. 333, sec. 1. The change in the law which this amendment made was to eliminate permanent exemption certificates and to require that "all certificates of exemption shall be renewed or reissued annually." Obviously, when they passed this 1945 amendment the lawmakers were undertaking to discharge their constitutional duty to make such "regulations as may be necessary to detect and punish fraud and to preserve the purity of the ballot box." Texas Const., Art. VI, sec. 4; Texas Power & Light Co. v. Brownwood Public Service Co., supra. The need for the change appears right plain. Persons exempt from poll tax payments got on the tax collector's poll list and, not being obliged to renew their certificates annually, they never got off, even if they moved away or died. It is apparent that from 1930 to 1945 hundreds, even thousands, of people in the large cities must have been listed as voters holding permanent exemptions, and the election judges

in the populous places had no way of knowing what persons carried on the poll lists as qualified electors were in fact dead or no longer local residents.

If the legislature thought it wise to abandon the system of permanent exemption certificates and go back to the policy of requiring them to be reissued or renewed annually, as was done in the 1945 amendment, the courts should meticulously respect the legislative will. This amendment mandatorily declares that these annual renewals *shall* be obtained. The courts ought not to contort this language to mean anything other or less than what the lawmakers said. To rule this requirement directory only, as the majority has done, is to nullify a legislative enactment which the majority concedes is constitutional, and thus empty it of all vitality. For if the act is merely directory, people may ignore it at their pleasure and the law becomes as dead a letter as if it had never been written. Nullification of legislation by this means ought not to be countenanced by the courts. This enactment, being within proper constitutional bounds for legislative action, ought by all means to be given full effect. Anderson County v. Houston & G. N. R. Co., 52 Texas 228; Wood v. State ex rel. Lee, 133 Texas 110, 126 S. W. (2d) 4, 121 A. L. R. 931. The necessary meaning of the majority opinion is that although the lawmakers had authority to enact this, a valid measure, they nevertheless intended it to be an utterly useless appendage to our statutory law.

The majority suggest that the emergency clause of the 1945 amendment shows that the act was directory rather than mandatory. That clause reads:

"The fact that there are at this time the names of many people who are deceased or who have removed from the State of Texas upon the poll tax exemption lists of all the counties throughout the State, places a heavy burden upon the tax assessors and collectors of each of the several counties of Texas, creates an emergency and an imperative public necessity that the Constitutional Rule requiring bills to be read on three several days in each House be suspended," etc.

It is well known that emergency clauses are frequently not at all relevant to the purpose and policy of the act itself. The office of an emergency clause is most aptly phrased thus in 39 Tex. Jur., Statutes, sec. 121:

"The purpose of an emergency clause is not to clarify or declare the intention of the Legislature, nor to explain the ex-

press language of the act, but merely to justify suspension of the constitutional rule requiring the bill to be read on three separate days or to make the act immediately effective. It may not be invoked for the purpose of raising an ambiguity in a statute, or to control its plain meaning or purpose. But an emergency clause may be considered if it sheds light upon the inquiry and will aid the court in ascertaining the legislative intent, even though it is not effective to suspend the constitutional rule."

This act is so plain that it construes itself. The requirement for annual renewals of certificates of exemption could not have been more plainly stated nor simply said. This clear meaning ought not to be confused or rendered doubtful by any language in the emergency clause.

The majority also suggest that an Attorney General's opinion in 1946 held this act invalid (which is true—Opinion No. 0-7234, Atty. Gen. of Texas), and since the opinion was acted upon by many and the legislature has met after its rendition without amending the law, the construction of the opinion must prevail. The Attorney General's opinions are entitled to and will receive the highest respect from the courts. But where, as here, he erroneously construes a statute which is not doubtful, that construction ought not ripen into a rule binding on the courts. Fire Ass'n of Philadelphia v. Love, 101 Texas 376, 108 S. W. 158, rehearing denied 101 Texas 376, 108 S. W. 810; Jones v. Marrs, 114 Texas 62, 263 S. W. 570; City of Tyler v. Texas Employers' Ins. Ass'n (Tex. Com. App.) 288 S. W. 409; rehearing denied 294 S. W. 195. I submit that the statute under study is neither doubtful nor vague, and the courts should decline to be bound by an erroneous departmental interpretation of it.

The 1945 act requires, as has been observed, that these "certificates of exemption shall be renewed or reissued annually." The majority hold that "annually" means at any time during the year and before the citizen votes. Were the 1945 enactment dissociated and construed apart from all the other provisions of Title 50 on Elections, this might be a tenable view. But the amendment by its own terms remains "Article 2968," and must take its place and be arrayed along with the other election enactments. It must be construed, if possible, to give a harmonious pattern to the entire Election Law. International & G. N. R. Co. v. Bland (Tex. Civ. App.) 181 S. W. 504.

It must be observed, as has been suggested, that the 1930 amendment allowed those originally entitled to exemption certificates to get them any time from the first of January up until the elector voted. But this was abandoned in 1935 in favor of requiring these certificates to be obtained before the first of February after the citizen became exempt from paying a poll tax. The reason for this return to the old system readily emerges from a study of other articles of the Election Law which will be briefly reviewed.

It is made the duty of the county tax collector to prepare, before the first day of April of each year, an alphabetically arranged list for each precinct showing all voters who have paid poll taxes or received exemption certificates. This poll list must be furnished to the presiding election judge of each precinct. Art. 2975, R. S. When the citizen presents himself to vote, he shall deliver his certificate or poll tax receipt to an election judge and announce his name. The judge shall compare the appearrance of the party with the description on the list and, if satisfied, let the voting proceed. Art. 3005, R. S.

Significantly, there is no provision in the statutes for the preparation of any supplemental poll list by tax collectors after the first of April save only in respect of certain poll tax paying voters under circumstances not material here. Art. 2975, R. S. So, if persons exempt from poll tax payment were allowed to secure their certificates of exemption after the tax collector closed his poll list and before an election was held, the poll list in cities of over 10,000 inhabitants might and probably would fail to list legally qualified voters in great numbers and thus deprive the election judges of an effective means of protecting the "purity of the ballot box." Yett v. Cook, 115 Texas 205, 281 S. W. 837. If construed to allow the renewal of exemption certificates at any time before the elections, the 1945 amendment would not be at all effective to get exempt persons properly listed in the cities and the act would be measurably robbed of its efficiacy in preventing illegal voting.

These poll lists occupy an important place in our election machinery. The statutes requiring the tax collectors to compile and the presiding judges at the elections to obtain and have at the polling places lists of the voters have been held mandatory, and an election governed by the general election statutes is not valid unless a poll list is prepared and furnished to the election officials. Arts. 2975 and 2993, R. S.; Yett v. Cook, supra.

Manifestly, it is of the greatest importance that these lists be as current and complete as the circumstances will admit. Lists which had been compiled before April 1st as the law requires would obviously be neither current nor complete, but would fall far short of the serviceability the law contemplates for them, if voters in large numbers are permitted to apply for and receive certificates of exemption after the lists have been closed. This the majority view will permit.

Moreover, Article 3004, R. S., which is unchanged since 1905, reads:

"No citizen shall be permitted to vote, unless he first presents to the judge of election his poll tax receipt or certificate of exemption issued to him before the first day of February of the year in which he offers to vote except as otherwise permitted in this title, unless the same has been lost or mislaid, or left at home, in which event he shall make an affidavit of that fact, which shall be left with the judges and sent by them with the returns of the election; provided, that, if since he obtained his receipt or certificate he removes from the precinct or county of his residence, he may vote on complying with other provisions of this title."

The certificate of exemption, it was clearly contemplated, would be good only for the year in which the elector offered to vote. So, from 1905 to 1930 new certificates annually had to be obtained before the first day of February. That being the law prior to 1930, a like construction is applicable to the act as amended in 1945, which in effect went back to the old law. It should be so held.

I have not touched in this dissent upon the jurisdiction of this court, and no not care to discuss it at length. But I think it extremely dubious that we have jurisdiction. It is difficult to perceive of any election case which does not subject some statute to judicial review. And the majority hold in effect that if the Court of Civil Appeals decision reviews a statute, a writ of error will lie. If that view is right, the statute (Art. 1821, R. S.) making the decision of the Court of Civil Appeals final in election cases will have but meager application.

Opinion delivered June 23, 1948.

BREWSTER and FOLLEY, Associate Justices, join in this dissent.