## M. B. RUDMAN ET AL v. RAILROAD COMMISSION OF TEXAS ET AL

No. A-8352. Decided July 26, 1961
Rehearing overruled October 18, 1961
(349 S. W. 2d Series 717)

*John E. Taylor,* of Marshall, *Raymond A. Williams, Jr.,* of Dallas and *Hart & Hart,* of Austin, for petitioners.

*Will Wilson,* Attorney General, *Houghton Brownlee, Jr., Linward Shivers* and *John Wildenthal, Jr.,* Assistant Attorneys General, *Black & Stayton* and *Powell Rauhut, McGinnis, Reavley & Lochridge,* of Austin, for respondents.

MR. JUSTICE STEAKLEY delivered the opinion of the Court.

Petitioners own and operate the working interest in six gas wells in the Buffalo and South Buffalo Fields in Leon County. Respondents-Intervenors (Lone Star Producing Company and Christie, Mitchell & Mitchell Company) have the other wells

in the fields, twenty-eight in number, and are aligned with the respondent Railroad Commission. Petitioners' wells are connected with the pipeline of Bi-Stone Fuel Company and Respondents-Intervenors are connected with the pipeline of Lone Star Gas Company.

The Railroad Commission by orders dated August 20, 1959, (effective August 1, 1959) adopted Rules 5 and 7 prorating the production of gas in the Buffalo and South Buffalo Fields. The rules are substantially the same, and Rule 7 is copied in the opinion of the Court of Civil Appeals, 344 S.W. 2d 212, 213. The type of proration embodied in the rules is known in the industry as a "Henze type" order and will be sometimes referred to as such. Thereunder the Commission does not assign allowables, as stated in the rules, "until the month following the month in which monthly production reports * * * are due," and then upon the basis of "a schedule of factors based on Rule 6(a) which will give each well's allowable when multiplied by the total production of all prorated wells in the same reservoir." Further, under the rules, "Any well which becomes overproduced in an amount equal to or more than its allocated allowable for the two months preceding will be shut in until its overproduction has been reduced by subsequent allocation of its monthly share of the field allowable to an amount not exceeding its allowable for the then current month."

After the total production figures of the fields for August, 1959, became known in October, 1959, the Commisson determined that the wells of petitioners had overproduced during August. Petitioners then applied to the Commission for rescission of Rules 5 and 7, and on December 7, 1959, after hearing, the Commission entered the following order:

"(1) Rescinded Field Rules No. 5 and No. 7 from Special Orders #5-41,166 and #5-41,165 respectively and made the six (6) months balancing rule (Statewide Rule 24(b) applicable to these fields.

"(2) Denied M. B. Rudman et al's request to cancel the overproduction and underproduction accrued since August 1, 1959.

"(3) Directed the Gas Department to determine the market demand from these fields each month, utilizing purchaser nominations, past production history, and any other

information deemed pertinent including its own judgment.

"(4) (a) Ruled that August 1, 1959, to March 1, 1960, shall be the first balancing period for these fields, and any wells overproduced as of March 1, 1960, must be made up to September 1, 1960.

"(b) Ruled that allowables assigned these fields since August 1, 1959, be revised as prescribed above (3), and that any well found to be overproduced in violation of the State-wide Rule 24(b) must be shut in now until the overproduction is made up.

"Revised gas schedules for August, September, October, November and December 1959, will be forthcoming. Further, formal orders will be forthcoming to amend the existing field rules for these fields."

The revised allowables were issued by the Commission on December 11, upon the basis of which Petitioners' wells were found to have overproduced for the preceding months of August —December, and on December 14 Petitioners were ordered to shut in their wells to make up the overproduction.

Thereupon, Petitioners appealed to the courts. The trial court held invalid Rules 5 and 7 of the Railroad Commission orders dated August 20, 1959, the order of the Commission dated December 7, 1959, the revised allowables dated December 11, 1959, the shut in orders dated December 14, 1959, and the confirmatory order of the Commission dated February 8, 1960. The trial court further held that Petitioners' wells were subject to the provisions of Statewide Rule 25 of the Railroad Commission for the months of August —December, 1959.

On appeal the Court of Civil Appeals at Austin held valid the "Henze type" order embodied in Rules 5 and 7 of the Railroad Commission orders of August 20, 1959, and reversed and rendered the case against Petitioners, 344 S.W. 2d 211. The Court of Civil Appeals stated "It is our opinion that this judgment is erroneous, and that the attacked order of the Commission is valid. Our reasons for this conclusion are twofold. One reason is that the validity of a similar order was adjudicated by this Court and the Supreme Court in Railroad Commission of Texas v. Permian Basin Pipe Line Company, 302 S.W. 2d 238, writ ref., n.r.e. The other reason is that such opinion is correct." The

Court recognized that there are distinctions between Permian and this case, but after discussing the matter at great length was of the view that the distinctions "do not efface the rule of stare decisis nor the obligation of this Court to respect an adjudication by the Supreme Court which we considered to be applicable to the question before us."

The Permian case referred to by the Court of Civil Appeals involved two causes which were not consolidated for trial but were tried together and had a common record; The Court of Civil Appeals determined the questions presented in each case in one opinion. Separate applications for writ of error were filed by Permian Basin Pipe Line Company and Phillips Petroleum Company, and this Court refused the applications in each instance with the notation, no reversible error. The primary problem involved the Common Purchaser Act, Article 6049a, and the dominant purpose of the orders of the Railroad Commission was to require Permian Basin Pipe Line Company to take ratably from the well of Atlantic Refining Company and not exclusively from Phillips Petroleum Company. It is correct, however, that the application for writ of error filed by Phillips presented as error the holding of the Court of Civil Appeals that the Commission order of November 1, 1956, which was the same "Henze type" order as here, was valid and in compliance with Section 12 of Article 6008. We therefore reconsider our refusal of the application of Phillips n.r.e. since the factual differences there and here do not control the question of whether or not the orders comply with and are authorized by the statute.

Section 12 of Article 6008 reads as follows:

"It shall be the duty of the Commission to determine the status of gas production from all reservoirs in this state. If and when the Commission finds that waste exists or is imminent in the production of gas from any reservoir, or that the capacity of the wells to produce gas from any reservoir exceeds the market demand for gas from such reservoir, the Commission shall then proceed by proper order to prorate and regulate the gas production from such reservoir on a reasonable basis. On or before the 20th day of each month, the Commission, after notice and hearing, shall determine (1) the lawful market demand for gas to be produced from each such reservoir during the following month; and (2) the volume of gas that can be produced from such reservoir and each well therein during the following month,

without waste. The Commission shall then fix the monthly reservoir allowable of gas to be produced from such reservoir at the lawful market demand therefor or at the volume that can be produced from such reservoir without waste, whichever is the smaller quantity. The monthly reservoir allowable shall be allocated among all wells entitled to produce gas therefrom so as to give each well its fair share of the gas to be produced from the reservoir, provided that each well shall be restricted to the amount of gas that can be produced from it without waste. The volume of gas so allocated to each well shall be regarded as the monthly allowable for such well. The daily market demand for gas, and the daily allowable, shall be determined by dividing the monthly demand and the monthly allowable by the number of days in the month. As amended Acts, 1947, 50th Leg., p. 1059, ch. 453, Sec. 1."

It is at once manifest that the Commission by Rules 5 and 7 did not prorate gas production in the Buffalo and South Buffalo Fields as directed by the Legislature in the mandatory language of Section 12. The Commission did not in these orders purport or attempt to determine before the 20th of each month the lawful market demand of the reservoirs, or the volume of gas that can be produced without waste, during the following month; and, then, to fix prospectively the monthly reservoir and well allowables. Instead, the Commission undertook to assign allowables by retroactive application to actual production.

True, the statutory objective is the "fair share" for each well; but the Legislature specified the means to be employed to this end, and thereby expressly restricted the Commission in the manner of accomplishment. Whether or not the Legislature devised the most practicable procedure in requiring the fixing of gas allowables in relation to market demand and in advance of production is not for the courts to decide; suffice to say, this is what the Legislature did.

Moreover, it is obvious that Section 12 would not have gone beyond its first two sentences had the Legislature intended for the Commisson to have full freedom to fix gas allowables as it deemed most feasible and practicable—whether before or after actual production—to achieve the objective of "fair share" of gas for each well. Rules 5 and 7 can be said to comply with Section 12 only by giving no effect to the last five sentences of the Section wherein, after imposing the duty of prorating gas

production "on a reasonable basis," the Legislature then directed the procedure to be followed by the Commission in arriving at "reasonable basis" and "fair share" for each well.

Which, in turn, precludes a construction of Sections 1, 10, 14 and 18 of Article 6008 as overriding the specific requirements of Section 12. The correction or relaxation of the Section 12 requirements is a legislative matter if the allowables fixed by the Commission pursuant thereto are seriously fallible.

■ Chief Justice Phillips stated the rule in Simmons v. Arnim, 110 Tex. 309, 324, 220 S.W. 66, 70:

> "Courts must take statutes as they find them. More than that, they should be willing to take them as they find them. They should search out carefully the intendment of a statute, giving full effect to all of its terms. But they must find its intent in its language, and not elsewhere. They are not the lawmaking body. They are not responsible for omissions in legislation. They are responsible for a true and fair interpretation of the written law. It must be an interpretation which expresses only the will of the makers of the law, not forced or strained, but simply such as the words of the law in their plain sense fairly sanction and will clearly sustain."

■ We hold that Rules 5 and 7 of the proration orders of the Railroad Commisson dated August 20, 1959, were in noncompliance with Section 12 of Article 6008 and were invalid *ab initio*.

We thus overruled the contentions of Respondents that "Petitioners were required to obey them [the orders] while they were on the books" and that "the Commission nevertheless had the power to charge Petitioners" with overproduction thereunder. Thompson v. Railroad Commission, 150 Tex. 307, 240 S.W. 2d 759, and Texas Steel Company v. Fort Worth and D. C. Ry. Co., 120 Tex. 597, 40 S.W. 2d 78, cited by Respondents, are distinguishable. Procedural questions are not involved and it is not necessary to go behind the orders under review since their invalidity appears on their face.

We see no merit in the further contention of Respondents that the order of the Commission of December 7 is indivisible and Petitioners are precluded from attacking the overproduction

charged to their wells upon the basis of recalculated allowables applying to the preceding period of August—December, 1959. It is to be noted that Petitioners do not attack the prospective operation of the December 7 order. It would seem clear that the success of Petitioners in obtaining a rescission of Rules 5 and 7 would not bar Petitioners from attacking the recalculated allowables for the past period during which the rules were in effect.

Respondents also contend (in the alternative) that Rules 3 and 6 of the August 20, 1959, order, which embody the 1/3 - 2/3 allocation formula, are to be applied to allowables which "must be deemed to have been fixed under the rules which would have been in effect if the void method had never been prescribed," the reference being to the Railroad Commission Memorandum of March 14, 1953, outlining the method to be used by the Commission in determining allowables, and known as the "standard method"; or, as stated in Respondents' Post-Submission Argument, the Commission in its December 7 and 11 orders revising the allowables to apply to the wells of Petitioners for the preceding period of August—December "proceeded in exactly the way it would have proceeded had the standard method of proration been in effect," and thus "the Commission placed Petitioners in precisely the position they would have occupied had the Commission in the first instance employed the standard type method of allocation instead of the Henze type method."

Respondents thus urge that in legal effect the gas fields were at all times subject to subsisting proration orders under which the wells of Petitioners can be charged with past overproduction, notwithstanding the invalidity of the specific proration orders put in force by the Commission for the period in question.

This cannot be so. The Commission did not undertake to utilize the standard method "in the first instance." Moreover, the December 7 and 11 orders which revised the allowables for retroactive application to the preceding August—December period were not in compliance with Section 12 of Article 6008; these orders of December 7 and 11 cannot be considered as replacing invalid Rules 5 and 7 as of August 20 so as to form legal basis for the revised allowables and hence to supply a previously subsisting proration order to which Rules 3 and 6 of the August 20 orders could apply.

The judgment of the Court of Civil Appeals is reversed and the Judgment of the trial court is affirmed.