*296 DISSENTING OPINION
HUGHES, Justice.
This election was held at a time when there was a legal vacuum on the question of who were qualified electors. The laws requiring, with certain exceptions, the payment of a poll tax as a requirement for voting had been held unconstitutional by a three judge federal court, and the acts of the Legislature providing for registration of voters had not been in effect long enough for registration thereunder to be made.[1]
The election officials attempted to fill this gap by permitting any person who would have been a qualified elector had he paid his poll tax to vote. Commendable as this action was, it was wholly without sanction of law, and in my opinion does not help matters. These votes, so cast, were merely straw votes.
The notice of this election was directed to “Resident Qualified Electors” and it provided that “None but legally qualified voters * * * shall be entitled to vote.”
This notice was dated February 1, 1966, before the federal court had invalidated the poll tax as a requirement for voting.
It seems to me that it is asking too much of the voting public to expect them to know who could or could not vote under these circumstances. If there is basis in this assumption, then the election was not a fair election.
The federal court poll tax decisions are now final. They are binding on this Court.
The rule generally is that an unconstitutional law is void ab initio and that no rights can be created under it. 16 Am.Jur. 2d, Constitutional Law, Sec. 177. There are exceptions to this rule, one of which is that equitable rights may be created under a statute subsequently held unconstitutional. Wichita County v. Robinson, 155 Tex. 1, 276 S.W.2d 509. If the election here had gone uncontested, equities would be created. This election has been timely contested and vigorously prosecuted, and no one could have relied upon its validity to their legal detriment. I believe an election should be held at which all duly qualified electors will have the legal right to vote.
I disagree with the majority also in its action in sustaining the validity of the votes of Mr. and Mrs. Wayne S. Reed.
Mr. Reed testified:
“Q Had you ever given your address and your voting precinct as Robert Lee before?
A No, sir.
Q Precinct 1 before?
A No, sir.
Q You had never done that before?
A No, sir.
Q You had always given it as Silver?
A Yes.
Q But this time you and your wife— was your wife with you or did you get them for both of you?
A I got them for both of us.
Q And you gave it this time as Robert Lee?
A Yes, sir.
Q And the voting precinct No. 1?
A Yes.”
Thus, Mr. and Mrs. Reed’s poll tax receipts were issued showing their voting residence to be in Precinct 1, rather than in Precinct 8 where they voted in this election. Neither Mr. or Mrs. Reed made any effort *297 to have their poll tax receipts corrected as the law requires. Neither did Mr. or Mrs. Reed furnish an affidavit with the presiding judge of the election precinct where they voted. Art. S.14, Vernon’s Annotated Tex. Election Code, partially copied in the majority opinion.
The names of Mr. and Mrs. Reed were not on the poll list for the precinct in which they voted. See Art. 5.22 Election Code, supra.[2]
The majority sustains these votes primarily on the grounds that the statutes not complied with are directory, and that the Reeds and their place of residence were well known to the election officials.
In my opinion, the following cases require that these votes be invalidated: Major v. Loy, 155 S.W.2d 617, Tex.Civ.App. Eastland, n. w. h., Tondre v. Hensley, 223 S.W.2d 671, Tex.Civ.App. San Antonio, n. w. h., and Graham v. Villareal, 242 S.W. 2d 258, Tex.Civ.App. San Antonio, n. w. h.
In Major v. Loy, Mrs. Coffee’s poll tax receipt showed her to be a resident of the Farmington Precinct. She voted in the Elmont School District and upon findings that she lived in that District the trial court sustained her vote. In overturning this ruling the Court stated:
“This question is posed: When one, subject to the payment of a poll tax, as an element of his qualifications to vote, presents his poll tax receipt showing his residence to be in another precinct than the one in which he offers to vote, may the election officers determine that the statement of the voter’s residence as made in the poll tax receipt is the result of mistake and be authorized to find as a fact the voter’s residence to be in the precinct in which he offers to vote and thereupon be authorized to accept and count such vote? This is a novel and difficult question to which we find no conclusive answer in any of the decisions.
The Constitution requires not merely the payment of a poll tax when due as one condition of the voter’s qualification, but also that he hold a receipt showing that said poll tax was paid before the first day of February next preceding such election. Art. 6, sec. 2. Section 4 empowers the Legislature to make ‘regulations as may be necessary to detect and punish fraud and preserve the purity of the ballot box.’ Id. Art. 6, sec. 4. It is undoubtedly referable to this power that the Legislature has provided, among other things, that poll tax receipts shall show the voting precinct in which the poll taxpayer resides. R.S.1925, Art. 2965, Vernon’s Ann.Civ.St. art. 2965. * * * Such is a part of the data deemed necessary to enable the tax collector to perform the further enjoined duty to furnish election officers with lists of poll taxpaying voters, etc., in each precinct. Id. Art. 2975, Vernon’s Ann. Civ.St. Art. 2975. * * * These considerations lead us to the conclusion, that since the law imposes the duty upon a citizen in person or by agent to furnish to the tax collector information as to the precinct of his residence and makes provision for the passing on of such information by the tax collector to the election officers for their guidance, to the end of preventing fraud and preserving the purity of the ballot box, if a citizen discovers an error in his poll *298 tax receipt he should take steps to have it corrected by the issuing authority before offering to vote in another district without change of residence. It follows that in our opinion the vote of Mrs. Coffee should have been deducted from the total number cast for consolidation.”
The majority distinguishes this case on the ground that the statute (5.14) has been amended (1963) since it was decided so as to provide two methods for avoiding the effect of the decision. It seems to me that the Legislature merely adopted the suggestion made in that opinion that the voter should have a mistake in his poll tax receipt corrected and provided a statutory method for doing so. Thus the need for correcting the mistake is emphasized by the amendment, not, as the majority holds, obliterated.
There is no need to decide in this case whether the Reeds could have truthfully made an affidavit that there was no “intentional misrepresentation” on their part so as to permit them to vote without having their poll tax receipts corrected for the reason that they made no such affidavit.
There is no question but that the Reeds knowingly requested and accepted a poll tax receipt showing their residence in a precinct in which they did not at the time reside. If this was not an “innocent mistake” on their part, then they could not have had their receipts corrected and they could not vote. There is no need to decide this question here because the Reeds made no attempt to correct their poll tax receipts.
I believe the decision in Major v. Loy is directly in point, and that the opinion of the majority is in conflict with it.
The opinion in Tondre v. Hensley, supra, was by Justice Norvell, now on our Supreme Court. It, too, was a school district consolidation election case. Tomas Lopez voted on a poll tax receipt showing his residence to he at a place in Voting Precinct No. 1 of Bexar County. No part of this precinct lay in District No. 29 where he voted. In holding this vote illegal, the Court said:
“It could hardly be said that any one could be so mistaken as to the location of the boundaries of these governmental subdivisions that he could reasonably believe that the address shown on the poll tax receipt was actually within the boundaries of the school district. The vote of Tomas Lopez should have been rejected upon authority of Major v. Loy, Tex.Civ.App., 155 S.W.2d 617.
⅜ ⅜ ⅝ ‡ ⅜ *
As pointed out in Major v. Loy, the statutory provisions relating to the issuance of poll taxes are designed to prevent election frauds. If voting in one part of the county were allowed upon a poll tax issued for a precinct in another part of the county without a change of residence, the possibilities of corruption are fairly obvious. However, it is a different matter when contiguous or near at hand voting precincts are involved and the poll taxpayer is mistaken as to the location of precinct lines and this confusion is also shared by the tax assessor-collector, the issuing authority for poll tax receipts. Voters should not be disqualified where uncertainty exists both in the minds of the tax assessor-collector and the voter as to where a precinct line runs.”
This case was decided in 1949, before the amendments to Art. 5.14, noted above. I consider this case to be in point, and the majority opinion to be in conflict with it.
The opinion in Graham v. Villareal, decided in 1951, was by Justice Pope, now on our Supreme Court. We quote the following from that opinion:
“Benigna R. Rodriguez and Juan Rodriguez voted against dissolution, but their *299 votes were declared illegal by the trial court. By separate findings of fact, the court found that these persons lived within the water district, but that for many years they had purchased poll taxes for the purpose of voting outside of their precinct, and that their receipts in fact showed they lived outside the water district. The fact that their receipts showed they lived outside their true voting precinct was not occasioned by any confusion in their minds, nor in the mind of the tax collector who issued the receipts, but, according to evidence which was sufficient to support the trial court’s holding, they had knowingly for many years obtained a poll tax receipt for a wrong precinct in order to cast their vote in a commissioners’ precinct election. The evidence showed that even subsequent to the water district election and its investigation, Benigna Rodriguez, Juan’s mother, had again purchased a poll tax receipt outside her correct precinct. Some of the evidence is conflicting, but there is ample evidence to support the conclusion that the two voters purchased their poll tax receipts for wrong precincts for political and personal reasons and not by reason of an innocent confusion. One who is innocently mistaken or has a bona fide confusion as to the location of precinct boundaries should not be and is not disfranchised so long as he in fact lives within the precinct where he presents himself to vote. Tondre v. Hensley, Tex.Civ.App., 223 S.W.2d 671. But, because one is not disfranchised when he makes an innocent mistake occasioned by a reasonable confusion of boundary lines, it does not follow that one who knowingly buys a poll tax receipt for a wrong precinct will be permitted to vote outside his precinct on the strength of his poll tax receipt and inside his precinct because that is where he should have voted. In other words, one who knowingly misrepresents the location of his precinct will not thereafter in the face of his fraud, be heard to say that he should be permitted to select his place of voting. We think the court correctly held, in effect, that the two voters in law had no poll tax receipts at all. Major v. Loy, Tex.Civ.App., 155 S.W.2d 617, imposes the burden upon the voter to have his poll tax receipt reflect the correct precinct information at the time he presents himself at the polls. This is required, as there stated, in the interest of preserving the purity of the ballot box. Tondre v. Hensley, supra, by this Court, grants an exception to that principle and relieves the voter from an onerous disfranchisement when he is innocently confused or there is a mistake occasioned by uncertainty of the true boundaries. We find no authorities which have pressed the exception so far, as is here contended, that we should permit the voters to knowingly buy outside their precinct for political and personal reasons but also vote inside their own precinct.” (Italics mine)
The majority makes no attempt to distinguish this case except to say that it was decided before the 1963 amendment to Art. 5.14.
I consider this case to be directly in point, and that the opinion of the majority is in conflict with it.
In Vicars v. Stokely, 296 S.W.2d 599, Tex.Civ.App., San Antonio, writ ref. n. r. e., 157 Tex. 182, 300 S.W.2d 623, the Court, Justice Pope writing, in holding that ballots should not be counted where ballot stubs were not signed by the voter, stated:
“A voter must strictly conform to those things which he is required by statute to do. ‘The weight of authority is clearly in favor of holding the voter, on the one hand, to a strict performance- of those things which the law requires of him, and on the other of relieving him from the consequence of a failure on the part *300 of election officers to perform their duties according to the letter of the statute where such failure has not prevented a fair election.’ McCrary, Elections, (4th Ed.) § 724; Davis v. Walcott, Tex.Civ.App., 96 S.W.2d 817. To hold that a voter’s signature on the stub is unnecessary would be to repeal the secret ballot law of Texas, which the Legislature has enacted.”
Justice Norvell, for the Court, wrote on rehearing. Chief Justice Murray dissented.
The majority, brushing aside statute after statute and decision after decision, has affirmed this case without any authority to sustain it. If the opinion of this Court is to stand, then the Legislature should cease its effort to enact laws to preserve the purity of the ballot and to prevent fraud and corruption in elections because the courts will pay no attention to them.
“Courts must take statutes as they find them. More than that, they should be willing to take them as they find them.” Justice Steakley quoting in Rudman v. Railroad Commission of Texas, 162 Tex. 579, 349 S.W.2d 717.
Appellants, in their brief, have eight points of error to the effect that certain findings of the trial court were so against the overwhelming weight and preponderance of the evidence as to be manifestly wrong and unjust. If the majority has passed on these points, it has used the wrong standard. In Re King’s Estate, 150 Tex. 662, 244 S.W.2d 660.
I respectfully dissent. I would reverse this case and declare the election invalid. In the alternative, I would declare invalid the votes of Mr. and Mrs. Reed, and order that they be deducted from the appropriate totals as disclosed by an examination of their ballots.

. The majority opinion refers to the contents of a motion filed in the Austin federal court case which is not in the record and to which I have not had access.

. Justice Simpson, dissenting in Thomas v. Groebl, 147 Tex. 70, 212 S.W.2d 625, stated:
“These poll lists occupy an important place in our election machinery. The statutes requiring the tax collectors to compile and the presiding judges at the elections to obtain and have at the polling places lists of the voters have been held mandatory, and an election governed by the general election statutes is not valid unless a poll list is prepared and furnished to the election officials. Arts. 2975 and 2993, R.S.; Yett v. Cook supra [115 Tex. 205, 281 S.W. 837]. Manifestly, it is of the greatest importance that these lists be as current and complete as the circumstances mil admit.’’