Janet Leigh MONTANYE, Appellant,

v.

TRANSAMERICA INSURANCE COMPANY, Appellee.

No. 01–81–0800–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

May 6, 1982.

Phillip A. Pfeifer, Houston, for appellant.

Don Karotkin, Frank Caton, Houston, for appellee.

Before SMITH, BASS and DYESS, JJ.

## OPINION

SMITH, Justice.

This is a case involving the construction of Tex.Ins.Code Ann. art. 5.06–1 (Vernon 1980) and in particular, insurance policy provisions providing for "underinsured" motorist coverage.

The appellant, Janet Leigh Montanye, initially filed suit against Edward von Drak for personal injuries arising out of an automobile collision wherein Ms. Montanye was riding as a passenger in Mr. von Drak's automobile. Subsequently suit was also brought against the appellee, Transamerica Insurance Company, to recover benefits under the underinsured motorists provisions of a policy of automobile insurance issued by the appellee to Mr. von Drak. The appellee paid the appellant $10,000 under the liability provision of von Drak's policy, but denied any responsibility for underinsured motorists benefits. The trial court entered a take-nothing judgment in the appellee's behalf and Ms. Montanye has brought this appeal. We affirm.

The agreed facts pertaining to this appeal are contained in the transcript and are included here for a better understanding of the controversy.

The parties entered agreed findings of fact into the record. As paraphrased, they indicate the following. On August 17, 1979, the appellant, a passenger in a car owned and driven by Edward von Drak, sustained injuries due solely to the von Drak's negligence in operating the car. The appellant's damages totalled $22,500.00. Von Drak was insured with a standard automobile liability policy issued by the appellee, which provided bodily injury liability limits of $10,000 per person and $20,000 for each occurrence, and uninsured/underinsured motorists coverage limits of $10,000 per person and $20,000 for each occurrence.

Before trial, von Drak settled with the appellant for $10,000, which the appellee paid pursuant to von Drak's bodily injury liability coverage. In return for this payment, the appellant non-suited von Drak. The appellant then claimed in its suit against Transamerica Insurance Company, the right to recoup the remainder of her damages under the uninsured/underinsured motorist endorsement to von Drak's policy. Both parties agree that the appellant is an insured under the uninsured/underinsured portion of von Drak's policy.

The appellant is before this court on her single point of error wherein she asserts that, under the agreed facts, the trial court erred in entering a take nothing judgment denying appellant recovery of underinsured motorist benefits under the Transamerica policy.

The insuring agreement of the uninsured/underinsured motorists coverage of the family combination automobile policy under which the appellant seeks to recover provides, in pertinent section:

"Underinsured motor vehicle" means a motor vehicle with respect to the ownership, maintenance or use of which, as respects damages because of bodily injury or property damage or both, the sum of limits of liability under all bodily injury and property damage liability bonds and insurance policies ... respectively applicable to bodily injury or property damage at the time of the occurrence is less than, or has been reduced by payment of claims arising from the same occurrence to an amount less than the applicable limits of liability under this insurance;

We note that the appellee, by its brief, concedes that the appellant Montanye, qualified as an insured under the policy and that the vehicle she was riding in at the time of the accident qualified as an "underinsured motor vehicle", by virtue of the fact that, as of the time of trial, the bodily injury liability limits applicable to the vehicle had been reduced by the payment of a claim (i.e., the appellant's claim) to an amount less than the applicable limits of

liability of the von Drak policy. To put the matter more succinctly, the appellee, by its brief, concedes that von Drak's bodily injury liability had been reduced to zero by the payment to the appellant of the sum of $10,000, under that coverage, which was the bodily injury liability limit. But the matter is not resolved at this point because the uninsured/underinsured motorists coverage also contains under the "limits of liability" section, the following pertinent provisions:

Regardless of the number of (1) persons or organizations who are insureds under this insurance, (2) policies or bonds applicable, (3) claims made or suits brought on account of bodily injury or property damage, or (4) motor vehicles to which this insurance applies:

(a) The limit of bodily injury liability stated in the schedule as applicable to "each person" is the limit of the Company's liability for all damages because of bodily injury sustained by one person as the result of any one occurrence...

.  .  .  .  .

(c) Any amount payable under the terms of this insurance because of bodily injury or property damage sustained in an occurrence by a person who is an insured shall be *reduced by*

(1) All sums paid on account of such bodily injury or property damage by or on behalf of

(i) The owner or operator of the uninsured motor vehicle and

(ii) Any other person or organization jointly or severally liable together with such owner or operator for such bodily injury or property damage, *including all sums paid under the bodily injury or property damage liability coverage of the policy,* and

(2) *The amount recovered or recoverable from the insurer of an underinsured motor vehicle*

(d) Any payment made under this insurance to or for any insured shall be applied in reduction of the amount of damages which he may be entitled to recover from any person insured under the bodily injury or property damage liability coverage of the policy. (Emphasis added.)

We hold that the clear and unequivocal language of paragraph (c) quoted above, defeats recovery by the appellant. This we do because the uninsured/underinsured motorists benefit limit available to each person is $10,000. Under paragraph (c) there is no alternative but to subtract from this $10,000 limit what the appellant received under the bodily injury liability coverage of the policy. This amount being $10,000 also, the liability of the appellee under the uninsured/underinsured motorists coverage is reduced to zero.

In the case of *American General Fire & Casualty Co. v. Oestreich,* 617 S.W.2d 833 (Tex.Civ.App.—Eastland 1981, no writ), the court was confronted with the exact issue before this court in the instant case, and on strikingly similar, if not identical, facts. In *Oestreich* three persons received injuries when their vehicle collided with another operated by Dowdle. He carried bodily injury liability limits of $10,000 per person and $20,000 per occurrence. The plaintiff Oestreich settled her claim against Dowdle, receiving $9,750 from his liability insurance carrier. The balance of the $20,000 was paid to or reserved for the other injured persons. It was American General as the carrier which had the uninsured/underinsured motorists coverage on the Oestreich vehicle. In the appellate court Oestreich urged the same arguments that are resorted to here by the appellant concerning the construction of Tex.Ins.Code Ann. art. 5.06–1(5). In rejecting Oestreich's contentions the court said, in pertinent part:

We think it is clear that the word "reduced" contained in Section 5 modifies the phrase "an amount up to the limit specified in the policy," rather than modifying the opening phrase, "payment to the insured of all sums which he shall be legally entitled to recover." [Citation omitted.]

The Court in *Lick v. Dairyland Insurance Co.,* 258 N.W.2d 791 (Minn.1977), construed the Minnesota underinsured motorist statute, which is similar to the Texas statute, to require that the amount

paid by the tortfeasor's liability insurance carrier should be deducted from the underinsured motorist coverage. 617 S.W. 2d at 835.

The Eastland Court held that the American General policy, as well as Tex.Ins.Code Ann. art. 5.06–1, entitled American General to a credit of $9750, thus reducing its liability to $250. Accordingly, the court reversed the judgment of the trial court and rendered judgment in favor of Oestreich for $250. To the same effect, see *Muller v. Allstate Insurance Company,* 627 S.W.2d 775 (Tex.App.—Houston [1st Dist.] 1981). In *Muller,* however, there was no agreement between the parties that the underinsured motorist coverage was applicable, as in the instant case.

By her brief the appellant seems to concede that she is not entitled to recover under the policy itself, as written; nevertheless, she urges that the policy should not be enforced as written because there is a conflict between it and the statute requiring uninsured/underinsured motorists coverage, Tex.Ins.Code An. art. 5.06–1.

■ We hold that the pertinent sections of the policy before us do not conflict in any manner with the Tex.Ins.Code Ann. art. 5.06–1. By its terms the statute expressly grants to the State Board of Insurance the authority to promulgate the forms of the coverage. Tex.Ins.Code Ann. art. 5.06–1(1)(c). The statute gives express recognition and authorization to the "limit of liability" here in question, in the following terms:

> The underinsured motorist coverage shall provide for payment to the insured of all sums which he shall be legally entitled to recover as damages from owners or operators of underinsured motor vehicles because of bodily injury or property damage in an amount up to the limit specified in the policy, *reduced by the amount recovered or recoverable from the insurer of the underinsured motor vehicle.* (Emphasis added.) Tex.Ins.Code Ann. art. 5.06–1(5).

■ It is essentially the position of the appellant that the phrase "reduced by the amount recovered or recoverable from the insurer of the underinsured motor vehicle," as used in the first-quoted portion of the statute, modifies the phrase "all sums which he shall be legally entitled to recovered," rather than the phrase "an amount up to the limit specified in the policy." This approach we view as being contrary to long-established and time-honored rules of statutory construction. In applying the doctrine of "last antecedent," relative and qualifying words, phrases and clauses are to be applied to the words or phrases immediately preceding, and are not to be construed as extending to or including others more remote. *City of Corsicana v. Willman,* 147 Tex. 377, 216 S.W.2d 175 (1949); *Bedgood v. Madalin,* 589 S.W.2d 797 (Tex.Civ.App.—Corpus Christi 1979) aff'd. in part, rev'd in part, 600 S.W.2d 773. When this rule is applied to art. 5.06–1(5) of the statute, the conclusion is compelling that the final clause of the section was intended to modify the clause immediately preceding it, rather than the first clause of this subsection.

In essence, it is the position of the appellant, and most ably presented, that this court not seek out the legislative intent underlying the statute but rather re-write the statute in such a way that it will be more equitable, more just and fair. Such an approach has met with repeated condemnation by our Texas Supreme Court. Courts must take statutes as they find them. The Legislature alone has the responsibility and is clothed with the authority to formulate the public policy of this State. *State of Texas v. City of Dallas,* 319 S.W.2d 767 (Tex.Civ.App.—Austin 1958), aff'd, 331 S.W.2d 732 *McCain v. Yost,* 155 Tex. 174, 284 S.W.2d 898 (1955). Actual or *supposed* deficiencies in the laws will *not* justify a court's excursion beyond its proper sphere in order to "plug a hole" or cure a *supposed* defect in the legislature scheme of things. *State ex rel Edwards v. Reyna,* 160 Tex. 404, 333 S.W.2d 832 (1960). On *four* separate occasions, beginning in 1920 and running into 1968, the Supreme Court of Texas has used the same trenchant and compelling language to lay down this principle.

Courts must take statutes as they find them. More than that, they should be willing to take them as they find them. They should search out carefully the intendment of a statute, giving full effect to all of its terms. But they must find its intent in its language, and not elsewhere. They are not the law-making body. They are not responsible for omissions in legislation. They are responsible for a true and fair interpretation of the written law. It must be an interpretation which expresses only the will of the makers of the laws, not forced nor strained, but simply such as the words of the law in their plain sense fairly sanction and will clearly sustain.

*Simmons v. Arnim,* 110 Tex. 309, 220 S.W. 66 (1920); *Texas Highway Commission v. El Paso Bldg. and Const. Trades Council,* 149 Tex. 457, 234 S.W.2d 857 (1950); *Rudman v. Railroad Commission of Texas,* 162 Tex. 579, 349 S.W.2d 717 (1961); and *Railroad Commission of Texas v. Miller,* 434 S.W.2d 670 (Tex.1968).

To repeat a Supreme Court admonition, "If Parliament does not mean what it says, it must say so." *Brazos River Authority v. City of Graham,* 163 Tex. 167, 354 S.W.2d 99, 109 (1962).

We affirm the judgment of the trial court.