EMILIO M. GARZA, Circuit Judge,
joined by E. GRADY JOLLY, EDITH H. JONES, JERRY E. SMITH, RHESA HAWKINS BARKSDALE and CLEMENT, Circuit Judges, dissenting:
This is, in essence, a causation case. Specifically, we must address whether the LISD violated Coggin’s procedural due process rights by terminating him without a hearing after the Commissioner determined that, under state law, Coggin had untimely filed his request for a hearing. Because I would find that the LISD did not violate Coggin’s procedural due process rights, I respectfully dissent.
I
Section 1983 creates a cause of action against any person who, under color of ' law, “subjects, or causes to be subjected,” a person “to the deprivation of [a constitutional right].”[1] In order to prevail on a § 1983 claim, this court has repeatedly held that it is not sufficient for a plaintiff to merely establish a violation of one of his constitutional rights. A plaintiff must also *473 show a causal connection between the deprivation of that right and the actions of the defendant against whom relief is sought. See, e.g., Neubauer v. City of McAllen, 766 F.2d 1567, 1571 n. 11 (5th Cir.1985) (reversing judgment against some of the defendants in a § 1983 action because plaintiff failed to show that they personally caused the deprivation of-a constitutional right); Irby v. Sullivan, 737 F.2d 1418, 1425 (5th Cir.1964) (“To be liable under section 1983,' a [defendant] must be either personally involved in the acts causing the deprivation of a person’s constitutional rights, or there must be a causal connection between an act of the [defendant] and the constitutional violations sought to be addressed.”). This causation requirement applies with equal force in cases where a § 1983 action is premised on a violation of procedural due process. Reimer v. Smith, 663 F.2d 1316, 1322 n. 4 (5th Cir.1981) (“It is axiomatic that a plaintiff cannot succeed in a § 1983 action if he fails to demonstrate a causal connection between the state official’s alleged wrongful action and his deprivation of life, liberty, or property.”).
The panel opinion conceded (as the majority opinion now concedes) that Coggin needed to establish causation to prevail, but contended that he had met that burden because the LISD made the final decision to terminate him knowing he had not received a hearing. Thus, the panel opinion concluded, the LISD deprived Coggin of his property without due process of law. Coggin v. Longview Indep. Sch. Dist., 289 F.3d 326, 336-38 (5th Cir.2002). The problem with the panel opinion’s analysis, however, is that it focused on the wrong causation issue. It based its causation analysis on who deprived Coggin of his protected property interest, when the real issue is who deprived Coggin of his procedural due process right.
Careful consideration of the right to procedural due process reveals the heart of a due process violation. Procedural due process does not protect one from the deprivation of life, liberty or property, but rather “from the mistaken or unjustified deprivation of life, liberty, or property.” Carey v. Piphus, 435 U.S. 247, 259, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978) (emphasis added). In other words, the key to a procedural due process claim is whether the plaintiff was afforded the quantity of process to which he was constitutionally entitled prior to the deprivation of a protected interest. In Zinermon v. Burch, the Supreme Court described the right to procedural due process as follows:
The Due Process Clause also encompasses a third type of protection, a guarantee of fair procedure.... In procedural due process claims, the deprivation by.state action of a constitutionally protected interest in “life, liberty, or property” is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law. ... The constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process. Therefore, to determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate.
494 U.S. 113, 125-126, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990) (internal citations and footnote omitted); see also Brewer v. Chauvin, 938 F.2d 860, 864 (8th Cir.1991) (“The complained-of constitutional violation is the denial of procedural due process, not the plaintiffs discharge from public employment.”). Stated simply, a plaintiffs due process rights are not violated because his property was taken from him; his rights are violated because he *474 was denied a certain amount of process before his property was taken. Because the essence of a procedural due process claim is whether or not the plaintiff was afforded constitutionally adequate process, the majority opinion’s emphasis on who made the final decision to terminate Cog-gin is misplaced.
To determine whether the LISD caused the deprivation of Coggin’s procedural due process right in this case, we must ask whether the LISD caused Coggin not to have a due process hearing. Based on the record in this case, the answer to this question is no. Under § 21.253 and § 21.254 of the Texas Education Code, the sole authority to appoint a state certified hearing examiner was vested in the Commissioner of the TEA. In this case, the Commissioner denied Coggin a hearing because, based on his interpretation of § 21.253, Coggin’s -request for a hearing was untimely. Even if one assumes that Coggin’s rights were violated by the Commissioner’s action, it was this mistake that caused Coggin to be denied a hearing and thus deprived him of his right to procedural due process. In contrast, the LISD did nothing to prevent Coggin from obtaining a pre-termination hearing. The LISD properly provided Coggin with notice of its intent to terminate his employment and of the measures he needed to take in order to preserve his right to a hearing. See Tex. Educ.Code Ann. § 21.251(a)(1). Once the Commissioner refused to appoint a hearing examiner, the LISD had no authority to order the Commissioner to change his mind or to appoint a certified hearing examiner on its own. See Tex. Educ.Code Ann. § 21.257. Because the actions of the LISD did not in any way cause the denial • of Coggin.’s right to a hearing, the LISD cannot properly be said to have caused the deprivation of Coggin’s right to procedural due process.
For the purposes of § 1983 liability, it is immaterial whether the LISD had other options available to afford Coggin due process after the Commissioner refused to appoint a hearing examiner. Although it is conceivable that the LISD could have held its own due process hearing[2] or sent a second notice of termination in an effort to extend the period of time in which Cog-gin could file a timely request for a hearing, any possible “inaction” by the LISD cannot fairly be termed a “cause” of the potential constitutional violation at issue here.
An “inaction” view of causation misstates the LISD’s obligation to Coggin in *475 this situation. Under the statutory setting of this case, Texas law deliberately separates the decision to terminate a public school teacher from the duty to afford a due process hearing, presumably as a means of protecting teachers from biased school board reviews.[3] The LISD had no authority to appoint a hearing examiner under this statutory scheme, nor did it have the authority to supplement Coggin’s statutorily-governed hearing with its own factfinding hearing. See Davis, 34 S.W.3d at 568. Under Texas law, the LISD’s role in providing Coggin procedural due process was complete when it provided him with constitutionally adequate notice of the charges against him and informed him of the procedures he. needed to follow to request a pre-termination hearing from the Commissioner of the TEA. Once the LISD fulfilled this obligation, under Texas law, the duty to ensure that Coggin was afforded the hearing to which he was constitutionally entitled shifted to the Commissioner.[4] The majority opinion does not hold that this shift in obligations is unconstitutional. Indeed, it cannot, because no case holds- that it is unconstitutional for Texas to “divide” due process in this way. Cf. Bush v. Viterna, 795 F.2d 1203, 1209 (5th Cir.1986) (“The states have virtually complete freedom to decide who will be responsible for [the tasks of modern government], and therewith to determine who will be held liable for civil rights violations that occur in the course of carrying them out.”). Instead, the majority opinion chooses to ignore this issue, limiting its analysis to the tangential issue of whether the LISD is the “final arbiter of employment disputes.”[5] Maj. Op. at 464.
' Thus, the only way that Coggin could succeed against the LISD in this case is if we invalidate Subchapter F’s hearing provisions. But Coggin does not challenge *476 the constitutionality of Texas’s statutory scheme, either on its face or as applied in his case. On the contrary, he concedes that the procedures set forth in Subchap-ter F of the Texas Education Code are precisely the kind of “reasonable procedural requirements” for invoking due process rights previously sanctioned by the Supreme Court.[6] See Logan v. Zimmerman Brush Co., 455 U.S. 422, 437, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982). Because Coggin argues only that the LISD violated his procedural due process right by terminating him after the Commissioner wrongfully denied him a hearing, his claim fails for lack of causation.
II
The majority opinion has taken a different tack from that of the panel opinion. The majority opinion contends that the LISD was the “sole cause of the violation of Coggin’s right to due process of law” because it discharged Coggin four business days after Coggin received notice of the Commissioner’s refusal to appoint a hearing examiner. Maj. Op. at 462. The logic of this “timing” causation argument fails on its own terms, see Parts II.A and B infra, but the majority opinion’s approach is suspect for at least two other reasons.
First, this new causation theory was never briefed or argued to either this court or the district court. In the panel opinion, the majority concluded that the LISD had violated Coggin’s due process rights by firing him when it knew he had requested a hearing but had not received one. Coggin, 289 F.3d at 335-38. The majority opinion now contends, without any prompting by the parties, that the LISD’s error was acting too quickly. This latter theory was not in any of the briefs submitted to the district court, nor was it included in the district court’s ruling. It is inappropriate for the majority opinion to decide this case on grounds that were not presented. United States v. Brace, 145 F.3d 247, 255-56 (5th Cir.1998) (en banc) (“Restated, we review only those issues presented to us; we do not craft new issues or otherwise search for them in the record.” (emphasis added)).
Second, the majority opinion states that the LISD’s discharge of Coggin “prematurely cut off Coggin’s right to appeal under § 7.057(d).” Maj. Op. at 463. Yet it cites no state law to support this argument. In fact, the majority opinion’s underlying premise that Tex, Educ.Code Ann. § 7.057(d) somehow incorporates Tex. Gov’t Code Ann. § 2001.176 is pure speculation about Texas law. Even if Coggin had a reasonable period of time to file an appeal, as the majority opinion contends (see Maj. Op. at 463 n.21), its further conclusion that Coggin did not have any appeal rights after the LISD terminated him is simply not supported by existing authorities. See, e.g., Smithville Indep. Sch. Dist. v. Hoskins, Nos. 03-98-00561-CV, 03-98-00624-CV, 1999 WL 716665 (Tex. App.—Austin Sept.16, 1999, no pet.) (not designated for publication) (considering a teacher’s § 7.057(d) appeal after he had been terminated by the school board and affirmatively deciding that the court had jurisdiction to consider the issues raised by the teacher, including various due process claims).
A
The majority opinion reasons as follows: First, Coggin had a protected property interest in continued employment and was entitled to constitutional due process before his employment was terminated. Second, Coggin attempted to invoke his *477 right to due process by requesting a pre-termination hearing from the Commissioner. Third, the Commissioner erroneously deprived Coggin of his right to a pre-ter-mination hearing by ruling that Coggiris request was untimely. Fourth, the Commissioner’s error could have been corrected by the Texas state courts, but the LISD cut off Coggiris appeals rights by firing him too quickly.[7] Thus, the LISD is the “true” reason that Coggin was not provided with the pre-termination hearing to which he was entitled.
Of course, the third step of the majority opinion’s reasoning is the linchpin to its analysis. Although the nature of Coggin’s employment created due process rights, such rights can be waived. The Supreme Court has held that a state may both create reasonable procedural requirements regarding the right to a hearing and terminate a claim for failure to meet these statutory requirements without raising due process concerns. Logan, 455 U.S. at 437, 102 S.Ct. 1148. In other words, Coggin was not entitled to a pre-termination hearing unless he complied with the reasonable procedural requirements of Chapter 21 of the Texas Education Code.[8] And one of those requirements is that a “teacher must file a written request for a hearing ... with the commissioner not later than the 15th day after the date the teacher receives written notice [of the proposed termination].” Tex. Educ.Code § 21.253 (emphasis added).
The Commissioner refused to appoint a hearing examiner because he determined that Coggin’s request was late, and thus Coggin had waived his right to such a hearing. If the Commissioner was correct — that the mailbox rule does not apply under state law — then Coggin was not constitutionally entitled to a hearing .or any other kind of process before the LISD terminated him. See Logan, 455 U.S. at 437, 102 S.Ct. 1148. Accordingly, if Cog-gin waived his rights, then it is irrelevant whether the LISD fired him one day later, or one year later.
When phrased this way, it is clear that the majority’s opinion rests on one fundamental premise: Section 21.253 of the Texas Education Code sets out a “mailbox rule” for hearing requests, and thus the Commissioner was wrong to apply a “receipt rule” to Coggiris request. The validity of Coggin’s § 1983 suit depends on this premise. Coggin cannot establish that his due process rights were violated unless he can show that he did not waive those rights. Surprisingly, the majority opinion does not focus on the burden of proof in this case. But it is undisputable that Cog-gin bears the burden of showing that a constitutional violation occurred. See Crawford-El v. Britton, 523 U.S. 574, 588, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998) (reiterating that the plaintiff bears the “initial burden of proving a constitutional violation”); Lewis v. Woods, 848 F.2d 649, 652 (5th Cir.1988) (“It is axiomatic that a plaintiff who files suit under 42 U.S.C. § 1983 may recover only if he proves a constitutional violation....”).
*478 The original panel opinion and the district court’s ruling at least implicitly recognized this, and included an explicit discussion on the rule of § 21.253. Coggin, 289 F.3d at 330-32. Although the detailed reasoning of those opinions is not included in the majority’s opinion,[9] the waiver issue must still be considered because it is the necessary platform for the majority opinion’s current holding. A careful examination reveals that this platform is faulty.
B
The majority opinion, like that of the original panel (and the district court), fails to recognize that § 21.253 of the Texas Education Code is ambiguous. Instead, all are content to believe that § 21.253 clearly applies a “mailbox rule” to hearing requests. However, § 21.253 does not say, on its face, that a filing is deemed timely if it was postmarked within the fifteen-day period. Likewise, § 21.253 does not explicitly state that hearing requests are governed by a receipt rule. Notwithstanding the majority opinion’s assumptions to the contrary, § 21.253 is anything but clear.[10] In fact, Coggin himself knew of § 21.253’s ambiguity. He admits that he checked with the post office to see if his request, sent by certified mail, with return *479 receipt requested, would arrive by the deadline. So Coggin, by his own admission, was not relying on a mailbox rule.[11]
In the face of this obvious ambiguity, the Commissioner could have reasonably interpreted the statutory language to include either a mailbox rule or a receipt rule. The Commissioner chose the latter. And, had the Commissioner’s interpretation been challenged in a Texas court, it would have been given “serious consideration, so long as the construction [was] reasonable and [did] not contradict the plain language of the statute.” Dodd v. Meno, 870 S.W.2d 4, 7 (Tex.1994) (quoting Tarrant Appraisal Dist. v. Moore, 845 S.W.2d 820, 823 (Tex.1993)). The district court, however, erred by not according the Commissioner this deference. It failed to even consider the constitutionality of the receipt rule applied by the Commissioner.
This failure was a serious analytical error. In its haste to determine whether a constitutional violation had occurred, the district court did not stop to consider whether the receipt rule had afforded Cog-gin due process. Without a constitutional violation, Coggin does not have a claim under § 1983. Thus, the pertinent query for the district court was whether the Commissioner’s reasonable application of a receipt rule provided Coggin with the necessary process. I agree with the majority opinion (and the district court) that a fifteen-day mailbox rule satisfies due process. Importantly, however, a fifteen-day receipt rule is equally constitutional.
The constitutional minima of procedural due process are notice and a meaningful opportunity to respond. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); Mathews v. Eldridge, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Against this constitutional background, it is clear that a fifteen-day receipt rule is as reasonable a procedural requirement as a fifteen-day mailbox rule; both provide a meaningful opportunity for a hearing. In fact, other courts have found significantly shorter time periods constitutional. See Lindsey v. Normet, 405 U.S. 56, 64-65, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972) (finding an eviction procedure with a two to six day early-trial provision constitutional); Panozzo v. Rhoads, 905 F.2d 135, 139 (7th Cir.1990) (affirming a district court’s ruling that notice of a pre-termination hearing less than a day in advance is sufficient for due process purposes); see also Giberson v. Quinn, 445 A.2d 1007, 1009-10 (Me.1982) (considering a ten-day time limit with a receipt rule for filing a request for a hearing following the suspension of a driver’s license).
The simple fact is that the district court did not need to determine state law to evaluate Coggin’s § 1983 suit: the Commissioner’s application of a receipt rule did not violate Coggin’s due process rights.[12] *480 Since the Commissioner applied a reasonable construction of a facially ambiguous statute, Coggin cannot seriously argue that his denial of a hearing was arbitrary. Cf. Neal v. Puckett, 286 F.3d 230, 249 (5th Cir.2002) (en banc) (Jolly, J., concurring) (defining “arbitrary” to mean “determined by individual discretion”), cert. denied, 537 U.S. 1104, 123 S.Ct. 963, 154 L.Ed.2d 772 (2003); Reid v. Rolling Fork Pub. Util. Dist., 979 F.2d 1084, 1088 (5th Cir.1992) (holding that “arbitrary” means unreasonable action or discrimination (emphasis added)). Thus, the opportunity afforded Coggin could only fail to be meaningful if it fell short of the constitutional minima— but it is the United States Constitution that determines the process Coggin was due, not the filing rule of § 21.253 of the Texas Education Code. And, as explained above, the rule applied by the Commissioner more than suffices when measured by a federal constitutional yardstick.[13]
The district court’s unnecessary foray into state law obscures the plain fact that Coggin failed to demonstrate a constitutional violation.[14] For the reasons given above, Coggin cannot prove that the Commissioner’s reasonable application of a receipt rule to his hearing request wrongly denied him a hearing. Accordingly, Cog-gin cannot show that he was unfairly denied a hearing; he cannot show that he did not waive his rights; and, therefore, he cannot prove that the LISD violated his due process rights by firing him immediately.[15]
The majority opinion attempts to shore up this faulty analysis by attaching various labels to the LISD, such as “responsible state actor,” “final policy and decision maker,” and “final arbiter of employment *481 disputes.” Maj. Op. at 464, 465. These terms are reminiscent of the analysis in the original panel opinion. Again, the panel majority concluded that the LISD violated Coggin’s due process rights because its “intentional discharge of Coggin in spite of its knowledge that he had not had any kind of hearing necessarily was the moving force behind Mr. Coggin’s deprivation and injury.” Coggin, 289 F.3d at 336. But this line of reasoning is also faulty for the reasons given above. See Part I supra.
Assuming, arguendo, that Coggin could somehow prove that § 21.253 clearly incorporated a mailbox rule and thus he did not waive his right to a hearing, he still cannot succeed in this suit. No matter what process Coggin was owed, he has failed to establish that the LISD caused the deprivation of his rights. Without the necessary causal link between Coggin’s supposed due process violation and the actions and/or duties of the LISD, Coggin cannot maintain a valid § 1983 claim against this defendant.
Ill
Failure to use proper constitutional analysis has led to the majority’s conclusion that the LISD violated Coggin’s procedural due process rights. They choose to grant relief when, for a multitude of reasons, Coggin has not proven a viable § 1983 claim. Even if the circumstances of Coggin’s termination seem unjust, we should avoid acting as cognoscenti of what is right and wrong, less we effectively relegate the Constitution and state law to mere bien pensant.
For the above reasons, I would vacate the decision of the district court and render for the LISD.

. Specifically, the text of § 1983 reads:
Every person who, under the color of any statute, ordinance, regulation, custom, or usage of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
42 U.S.C. § 1983.

. The majority opinion suggests that Texas law does not prohibit the LISD from holding its own hearing. Maj. Op. at 465. This conclusion is dubious. The Texas Supreme Court has held that a school district may not avoid the rules set forth in the Texas Education Code for terminating an employee. Montgomery Indep. Sch. Dist. v. Davis, 34 S.W.3d 559, 568 (Tex.2000) (concluding that "the Board did not have authority within the statutory scheme of subchapter F" to make additional findings beyond those made by the appointed hearing examiner); see also Tex. Educ. Code Ann. § 21.251 ("[Subchapter F] applies if a teacher requests a hearing after receiving notice of the proposed decision to: ... (2) terminate the teacher's probationary or term contract before the end of the contract period....”). Although Davis did not consider the due process aspects of the statutory scheme, it certainly illustrates the mandatory nature of the regime. The Education Code does not clearly authorize a school district to hold any type of hearing once the Commissioner declines to appoint a hearing examiner, and Davis at least suggests strongly that the LISD is forbidden from stepping beyond the narrow dictates of the scheme. See also Reyes v. Roma Indep. Sch. Dist., No. 083-R2-199, at 4-6 (Tex. Comm’r Educ. Feb. 25, 2000) (stating that the procedures set out in Chapter 21 are mandatory and exclusive, that a board of trustees does not have jurisdiction to deviate from those procedures, and that the parties cannot agree to change those procedures unless the statute authorizes them to do so).

. The apparent purpose of this scheme is to ensure teachers a fair and independent review of the allegations against them when faced with termination prior to the expiration of their contracts. Under Texas law, Coggin could be terminated only for "good cause as determined by the board." See Tex. Educ.Code Ann. § 21.211(a)(1) (emphasis added). By providing for an independent pre-termination hearing, however, Texas law limits the circumstances in which a school board may find "good cause” for termination. Although the school board may reject the conclusions of law and proposed action recommended by the appointed hearing examiner in an employee’s case, the school board may not reject the hearing examiner’s findings of fact if they are supported by the substantial evidence in the record. See Tex Educ.Code Ann. § 21.259.

. Normally, the party who causes the deprivation of property is the party responsible for affording due process. Indeed, had this case arisen before the Texas legislature amended the Texas Education Code in 1995, there would be no question that the LISD could be held liable under § 1983 for terminating Cog-gin without a hearing. In 1995, however, the Texas legislature dramatically altered the state’s provisions for terminating teachers under contract, and thereby changed this result.

.The "final decision maker” analysis in the original panel opinion concluded with the argument that the LISD was required to conduct a "due process hearing to comply with its federal constitutional obligations,” and that any obstacle created by Texas law would "have to yield to federal law under the Supremacy Clause.” Coggin, 289 F.3d at 336.
In actuality, the Supremacy Clause is irrelevant. It might be tempting to reason that if state procedures prevented the LISD from remedying the "mistake of law” made by the Commissioner, then those procedures should yield to federal law. This argument, however, assumes that the LISD retained an obligation to ensure that Coggin receive all the process he was due prior to terminating his employment. As noted above, Texas law vests that obligation in the Commissioner of the TEA— not the school district. Moreover, there is no legal support for the proposition that LISD had a federal obligation to compensate for the Commissioner’s alleged mistakes. Cf. Bush, 795 F.2d at 1209.

. Coggin does argue, however, that the Commissioner improperly adopted a receipt rule instead of the more “traditional” mailbox rule, which has led to mischief at both the trial and appellate levels.

. The majority opinion's recitation of the facts also suggests that the LISD terminated Cog-gin in the face of a " 'flurry of correspondence' " between Coggin’s attorney that the Commissioner regarding the timeliness of Coggin's hearing request. Maj. Op. at 463. In fact, the record clearly indicates that the flurry did not even begin until eleven days after Coggiris termination. So, there is no reason to believe that the LISD knew or had reason to know that Coggin was challenging the Commissioner’s determination.

. This fact is undisputed. Again, Coggin himself admits that the procedures set forth in Subchapter F of the Texas Education Code are precisely the kind of “reasonable procedural requirements'' sanctioned by the Supreme Court in Logan.

. The majority does, however, implicitly recognize the importance of this point. See Maj. Op. at 463 ("Consequently, we conclude that Coggin did not waive his rights....”), 463 (“In this case, ... Coggin was deprived of his protected employment right without the due process hearing to which he was entitled and which he did not waive ... ").

. This ambiguity can best be illustrated by examining the position taken by the district court. The district court first reasoned that "file” must not mean "receipt by the commissioner” because other provisions of the Texas Education Code explicitly use "receipt” language. Yet this argument is overly broad. Chapter 21 of the Texas Education Code uses "receive” to refer to a party's receipt of a document. Upon receipt, the party is given a certain amount of time to perform a designated action. In other words, the party is required to "file”, "request”, "notify”, et cetera within so many days after "receiving” some type of notice. See, e.g., Tex. Educ.Code Ann. § 21.207 (after “receiving notice of the proposed nonrenewal,” the teacher "shall notify the board of trustees ... not later than the 15th day after the date the teacher receives the notice”) (emphasis added); Tex. Educ.Code Ann. § 21.254(c) ("The commissioner shall assign a hearing examiner ... not later than the 10th business day after the date on which the commissioner receives the request for a hearing.”) (emphasis added). Viewed this way, it is clear that the Code's use of "receive” may be nothing more than a logical way to reference the start of a time period. This syntax does not, however, illuminate the meaning of "file” in § 21.253.
The district court also pointed out that the TEA’s own administrative regulations incorporate a mailbox rule, see Tex. Admin. Code Ann. § 157.1050(b), and took this as evidence of a general "view of the agency” that the mailbox rule governs hearings. But a general, catch-all provision in a different state code may not trump the detailed provisions set forth in chapter 21 of the Education Code. Evidence from within the same statutory scheme is more indicative of what the Texas legislature intended. See, e.g., Horizon/CMS Healthcare Corp. v. Auld, 34 S.W.3d 887, 901 (Tex.2000) (holding that “the more specific statute controls over the more general”); Rudman v. R.R. Comm’n of Tex., 162 Tex. 579, 349 S.W.2d 717, (1961) ("Courts must take statutes as they find them.”); Gov’t Pers. Mut. Life Ins. Co. v. Wear, 151 Tex. 454, 251 S.W.2d 525, 529 (1952) (holding that duty of courts is to construe a statute from the language used therein if possible). And a careful examination of chapter 21 reveals that the legislature deliberately included a mailbox rule in other sections. See Tex. Educ.Code Ann. §§ 21.105(a), .160, .210. Section 21.253 includes no such language, and this fact weighs against a mailbox rule.
Finally, the district court relied on Ward v. Charter Oak Fire Ins. Co., 579 S.W.2d 909 (Tex.1979). While the similarities between Ward and this case are striking, its importance is probably exaggerated. Decided almost twenty-five years ago, Ward involved the *479 worker’s compensation law, which the Texas Supreme Court held was "to be liberally construed to effectuate the remedies it grants.” Id. at 910. Liberal construction of the Worker's Compensation Law was an established policy even before Ward, but no legal authority indicates that Texas liberally construes the statutory scheme at issue here.

. If § 21.253 did clearly incorporate a mailbox rule, Coggin would have a much stronger constitutional claim. In that case, he could argue that it would be arbitrary, and therefore unconstitutional, for the Commissioner to deny Coggin's request for a hearing as untimely. Cf. Logan, 455 U.S. at 431-34, 102 S.Ct. 1148 (finding a due process claim when the plaintiff was denied a hearing after complying with every state law procedural requirement). This is not, however, the situation before us.

. Even if the Texas courts someday decide that § 21.253 incorporates a mailbox rule, the Commissioner's failure to afford Coggin that extra increment of procedural protection *480 would not automatically become unconstitutional. At the time Coggin was denied a hearing, the Commissioner’s reasonable interpretation and application of § 21.253 was enough to accord Coggin due process. Loudermill, 470 U.S. at 546, 105 S.Ct. 1487; Lindsey, 405 U.S. at 64-65, 92 S.Ct. 862.

. To be clear, because the receipt rule is constitutionally adequate, this court should not attempt to resolve the meaning of the term "file” in § 21.253. Likewise, the district court should have left this issue, a matter of state law, for Texas to decide.

. And the majority opinion seems to build on this error. It skims over this issue by insisting that the LISD "does not challenge or point to any error in the district court’s determination that Coggin timely filed his request for a hearing.” Maj. Op. at 462. This is simply not true. The LISD argued, before both the original panel and the en banc court, that Coggin was provided with the process he was due under the Fourteenth Amendment and, likewise, that the district court erred in its analysis of what process Coggin was due. See, e.g., Appellant’s Br. at 18, 24; Appellant’s Supplemental En Banc Br. at 15-16. The LISD also argues that this error, in turn, led the district court to "improperly ... reach and resolve other unnecessary questions.” Appellant's Br. at 24.
The LISD may not explicitly challenge the district court’s holding that § 21.253 incorporates a mailbox rule, but it clearly argued that the district court did not need to decide this issue because the rule of Logan applied. See id. at 18. Because we review the district court's legal determinations de novo, the LISD’s arguments are more than sufficient to preserve the issue of whether it was legally necessary, under federal constitutional law, for the district court to interpret § 21.253.

.Coggin’s ultimate failure to demonstrate a constitutional violation by the LISD distinguishes this case from Cleveland Board of Education v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). In Loudermill, the terminated school district employees had made the necessary showing that their rights were violated when they were fired without a pre-termination hearing. Id. at 548, 105 S.Ct. 1487. Unlike Coggin, the Loudermill employees were given no opportunity to request a pre-termination hearing. Id. at 536-37, 105 S.Ct. 1487. Thus, the issue of whether the employees had waived their rights was inapplicable.